Timothy L. COLEMAN,
Plaintiff–Appellant,

v.

DEPARTMENT OF REHABILITA-
TION AND CORRECTIONS, et
al., Defendants–Appellees.

No. 01–3169.

United States Court of Appeals,
Sixth Circuit.

Aug. 28, 2002.

Before SUHRHEINRICH and BATCHELDER, Circuit Judges; and LITTLE, District Judge.*

PER CURIAM.

Appellant Timothy L. Coleman, an inmate, appeals the dismissal of his 42 U.S.C. § 1983 claims against Appellees Ohio Department of Rehabilitation and Corrections (ODRC), the State of Ohio, Warden Ralph Coyle, and four unnamed John or Jane Doe prison guards (collectively "Appellees"), arising out of an alleged beating Coleman endured at the hands of the John Doe prison guards during a prison riot on September 5, 1997.

The causes against the ODRC and the State of Ohio were dismissed by the district court under the Eleventh Amendment because state agencies cannot be sued for monetary damages under § 1983. The cause against Warden Ralph Coyle was dismissed because Coleman provided no evidence Coyle had any direct involvement in or knowledge of the alleged beatings, and respondeat superior claims are not cognizable under § 1983. The causes against the John Does were dismissed as untimely.

Coleman claims the following assignments of error. He alleges his claims against the John Does are timely in light of the Ohio Savings Clause, Ohio Rev.Code § 2305.19, which permits a claimant to refile an action dismissed other than on the merits within one year of dismissal if the action had been "commenced or attempted to be commenced" prior to dismissal. In regard to the ODRC and the State of Ohio, Coleman claims, although he is not entitled to monetary relief, he should have been entitled to some sort of injunctive relief preventing future constitutional violations by prison officials.[1]

We find Coleman's claims without merit. First, Coleman's claims are not revived by the Ohio Savings Clause because his actions prior to dismissal do not constitute an "attempt to commence." Second, his claims against Coyle are rejected because respondeat superior claims are not cognizable under § 1983. Finally, no injunctive relief is available against the ODRC and the State of Ohio because Coleman has failed to allege an on-going unconstitutional policy that can be enjoined. Accordingly, we hereby reject Coleman's contentions and affirm the decision of the district court.

## I.

Coleman is an inmate at the Mansfield Correctional Institution in Mansfield, Ohio. On September 5, 1997, a riot erupted, of which Coleman alleges he was not a participant. At some point, while correctional officers were assuaging the riot, Coleman claims he was severely beaten, without provocation, by up to four prison guards, none of whose names are known to Coleman. Coleman sustained a dislocated shoulder.

Coleman filed an informal complaint against the officers on September 22, 1997, as required by Ohio Administrative Code § 5120–9–31.[2] Coleman then filed a for-

---

* The Honorable F.A. Little, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

1. On appeal, Coleman does not raise any specific assignment of error regarding the dismissal of his claim against Warden Ralph Coyle.

2. The inmate grievance procedure, binding on all prisons in the State of Ohio, requires three steps. First, the inmate must file an informal complaint. Second, he must file a grievance (or a "notification of grievance"). Third, he may then appeal the disposition of the grievance to the Chief Inspector. Ohio Admin. Code § 5120–9–31.

mal grievance on October 22, 1997. By all accounts, this grievance was never answered. After not receiving an answer, Coleman refiled his grievance on November 22, 1998. This second grievance was answered on November 24, 1998 by inspector Pricilla Rowe, and denied as untimely pursuant to DRC § 203.01, which provides that prisoner grievances must be filed within thirty days of the incident. Coleman appealed the decision to the Chief Inspector on November 27, claiming the untimeliness of the second grievance was due to prison officials' mishandling of his first grievance.[3] Rowe's decision was affirmed on appeal by Assistant Chief Inspector Antonio Lee. In upholding the decision, Lee stated there was no record of Coleman's grievances from 1997, although the evidence in the record now shows those grievances were filed.

Prior to the denial of his grievance appeal on December 31, 1998, Coleman had filed a complaint in the United States District Court on September 4, 1998, naming as defendants the ODRC, the State of Ohio, Mansfield Correctional Institution Warden Ralph Coyle, and four John Does, representing the prison guards he claims had beat him. The complaint was voluntarily dismissed on December 3, 1998, but Coleman re-filed the complaint on May 18, 1999, within the two-year Statute of Limitations.

During the next year, Coleman failed to serve process on *any* of the defendants. On March 16, 2000, the district court issued an order asking Coleman to show cause why the case should not be dismissed. Coleman's attorney responded he

had "inadvertently failed to serve" the defendants, yet subsequently continued to do nothing in regard to this case. In fact, service was not attempted on any of the defendants until late July 2000. In the interim, the Appellees had filed a motion to dismiss for lack of prosecution. The district court granted the motion and dismissed the case without prejudice on August 14, 2000. Coleman re-filed the complaint on September 11, 2000. Appellees again filed a motion to dismiss, alleging Coleman's September 2000 complaint was well outside the two year Statute of Limitations, considering the alleged assault had taken place in September 1997. The district court judge granted the motion on December 21, 2000, and subsequently denied Coleman's motion for reconsideration on January 2, 2001. Coleman then timely filed an appeal to this Court.

## II.

■ Coleman's claims against the John Does were dismissed by the district court as untimely, in violation of the two-year Statute of Limitations in Ohio for actions under 42 U.S.C. § 1983. Coleman now claims his complaint was timely, in light of the Savings Clause of the Ohio Revised Code, which provides:

In an action commenced, or attempted to be commenced, if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired,

---

**3.** The first grievance appears to have been timely filed. Coleman asserted in his appeal to the Chief Inspector that he had never received a response to this first grievance, which appears to be true because there is none in the record. Moreover, when returned, his second grievance was addressed to an Anthony Coleman. Coleman speculates this may have happened to the first grievance too, had it been returned at all. Coleman, therefore, claims his second grievance was untimely only because of the incompetence of prison officials surrounding the first.

the plaintiff ... may commence a new action within one year after such date. Ohio Rev.Code § 2305.19. Decisions of the district court granting a motion to dismiss are reviewed de novo. *See, e.g., Tropf v. Fidelity Natl. Title Ins. Co.,* 289 F.3d 929, 936 (6th Cir.2002); *United States v. Mise,* 240 F.3d 527, 529 (6th Cir.2001); *Patmon v. Michigan Supreme Court,* 224 F.3d 504, 508 (6th Cir.2000).

■ In a § 1983 action in federal court, we apply the Statute of Limitations of the relevant state. *Wilson v. Garcia,* 471 U.S. 261, 276–80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Ohio, there is a two-year statute of limitations for personal injury actions. Ohio Rev.Code § 2305.10. When we use a state's Statute of Limitations, we also use its procedural rules affecting that Statute of Limitations. *West v. Conrail,* 481 U.S. 35, 39–40 n. 6, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). Therefore, Coleman is correct that we are bound to consider the Ohio Savings Statute.

■ In order to apply, the Ohio Savings Statute requires two things. First, Coleman's claims must have been disposed of other than on the merits. Second, the action must have been "commenced or attempted to be commenced." Coleman's claims, dismissed for lack of prosecution, were expressly dismissed without prejudice, and accordingly, otherwise than on the merits. So, the question before us is whether the action was "commenced or attempted to be commenced" prior to the dismissal.

■ The key to interpreting the Ohio Savings Statute is the meaning of the word "commence." Under Ohio Rule of Civil Procedure 3(A), "[a] civil action is *commenced* by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant ... or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Rule 15(D)." (emphasis added). In other words, an action in Ohio is not commenced until there is (1) a filed complaint and (2) service upon the defendant within one year of the complaint. Here, it is uncontroverted Coleman did not "commence" the action because he never served the John Does. Accordingly, we must determine only whether Coleman "attempted" to commence it.

■ We are not only bound by the state's procedural rules, but also by the decisions of the Ohio Supreme Court to the extent they have already determined the proper definition of an "attempt to commence." In *Thomas v. Freeman,* 79 Ohio St.3d 221, 680 N.E.2d 997 (1997), the Ohio Supreme Court found a plaintiff had "attempted to commence" an action where he made repeated efforts to serve the named defendants via regular mail at the defendants' last known address. The plaintiff was ultimately unable to effectuate service, and his claims were dismissed for lack of prosecution and failure to obtain service. The Ohio Court held the plaintiff's claims were saved by § 2305.19 and the plaintiff, therefore, had one year from the date of dismissal to re-file his claim. While *Thomas* did not entirely define the scope of what is attempted commencement, its language suggests a good faith attempt at serving a defendant satisfies the "attempted commencement" requirements of the Savings Statute.

■ The only other relevant Ohio case is an unpublished decision of the Ohio Court of Appeals, *Mustric v. Penn Traffic Corp.,* No. 00AP–277, 2000 WL 1264526 (Ohio App. 10 Dist., Sept.7, 2000). In *Mustric,* the plaintiff attempted to serve two John Does named in a timely filed complaint. The plaintiff determined the identities of the John Does after the Statute of Limitations would have run, but

within a year of the filing of the original complaint, and attempted to serve them via certified mail. Pursuant to Ohio Rule of Civil Procedure 15(C), the amendment of the complaint to contain the defendants' true names related back to the original filing, and the action was timely, as it would have been here had Coleman identified the John Does after the Statute of Limitations had run but before the time for service had lapsed. The Ohio Appellate Court determined this was not an "attempt to commence," however, because Ohio Rule of Civ. Proc. 15(D) expressly requires all parties who were previously unnamed be served personally, and not via the mail. The plaintiff in *Mustric* did not follow the rules of service, and the Court held he, therefore, could not take advantage of the Savings Statute. *Mustric*, it seems, extends *Thomas'* logic to invoke a type of fault requirement. That is, after *Mustric*, a plaintiff can not invoke the Savings Statute if the reason the action was dismissed was the plaintiff's failure to follow the correct procedures. Contrary to the district court's opinion, *Mustric* does not stand for the proposition that the Ohio Savings Statute prevents a plaintiff from using a John Doe moniker in an action preserved by the Savings Clause. *Mustric*'s proposition is much simpler than that — if the dismissal is due to the plaintiff's own errors, then the plaintiff's action will not be saved.

*Mustric*, as an unpublished decision of the Ohio Court of Appeals, is not decisive if we believe the Ohio Supreme Court would have ruled otherwise. Where the state's highest court has not decided the issue before us, we may "not disregard a decision of the state appellate court on point, unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989). While neither *Thomas* nor *Mustric* is completely on point, each provides insight into this issue. *Mustric* is persuasive for its view that a plaintiff whose case is dismissed due to his own neglect cannot later take advantage of the Savings Statute. This is especially helpful as a logical extension of *Thomas,* wherein the Ohio Supreme Court held the Savings Statute can be invoked by a plaintiff who followed the proper statutory service procedures, even if service nonetheless failed. If this issue were presented, we believe the Ohio Supreme Court would follow *Mustric* and adopt the perfectly logical rule that a plaintiff cannot benefit from the Savings Statute where the dismissal was due to the plaintiff's own neglect.

Under this standard, we are charged then with the task of determining if Coleman's efforts were nonetheless enough to qualify as an "attempt to commence." Coleman filed his complaint on May 18, 1999. Subsequently, he did nothing in furtherance of this case until at least May 23, 2000—over a year after the filing of his complaint, and beyond the statutorily permitted time for service. In other words, Coleman's first action regarding this case took place at a time when the case easily could already have been dismissed for want of service.

On July 20, 2000, Coleman obtained summonses on the four John Does, and attempted to serve them, by their fictitious names, via certified mail. Under Ohio Rule of Civil Procedure 15(D), service on a fictitiously named defendant can only be made personally. Therefore, we disregard Coleman's attempt at certified mail service as improper and therefore not an "attempt to commence" under the Savings Statute.

Coleman would also like us to consider, as an "attempt to commence," his May 23, 2000 service of interrogatories upon the ODRC. It is granted Coleman's method of

attempting to identify the John Does was reasonable. Service of interrogatories upon another defendant, who would have been the only party with knowledge of the John Does' identities, is a proper vehicle of discovery. However, Coleman's assertion that this constitutes an "attempt at commencement" would be given more weight had he, first, bothered to serve the ODRC prior to the interrogatories; and second, served the interrogatories sooner. At this time, even though a year had passed, Coleman had not yet served the ODRC (nor any other Defendant). A defendant that has not been served is not yet a party to the action, and therefore not bound to comply with the plaintiff's discovery attempts. Furthermore, even had the ODRC been bound to answer the interrogatories, it had thirty days from May 23, 2000 in which to do so, which, had they taken the full allotted time, would have been in late June 2000 — well more than the 120 days for service given under the Federal Rules and even more than the one year given for service in Ohio Civ. Rule of Proc. 3(A). So, even if Coleman's interrogatories had produced the true identities of the John Does at that time, it would only have been by the grace of the district court that the case had not already been dismissed. Therefore, Coleman's less than minimal efforts cannot be said to be an "attempt to commence" the action since his efforts, even if fruitful, would not have been timely.

As a whole, the word "attempt" invokes a very low standard. In effect, any overt act in pursuance of the litigation could be an "attempt to commence." However, it is clear Coleman failed here to reach any minimal standard whatsoever. In no way do Coleman's efforts approach an "attempt to commence" the action in regard to these John Does. As a matter of fact, Coleman did not even "attempt to commence" the action in regard to the *named* defendants within a year. His first attempt at their service, albeit a successful one, did not occur until July 26, 2000, nineteen days before the case was dismissed, and well after the district court's March "show cause" order.

Accordingly, the Ohio Savings Statute does not apply to save Coleman's suit against the John Does because Coleman simply never "commenced" it nor "attempted to commence" it before it was dismissed. Since we can dismiss all of Coleman's claims in regard to the John Does on other grounds, it is unnecessary for us to address Appellees' argument that Coleman's cause should be barred because he had not exhausted his administrative remedies in regard to the John Does.[4] We affirm the decision of the district court and find Coleman's causes of action against any John Does are barred by the Statute of Limitations.

### III.

Next, Coleman seeks to hold then Mansfield Warden Ralph Coyle responsible for the actions of the John Doe prison guards.[5] However, Coleman does not al-

---

**4.** Although used as a defense below also, the district court never addressed this argument. The Appellees' argument is that since Coleman's second grievance was not timely filed, he cannot be said to have exhausted his administrative remedies. *See Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6th Cir.1997); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). Appellees' argument would likely fail, in light of the evidence that Coleman's first

grievance was timely filed and subsequently lost due to some sort of mishandling by prison officials. However, since we can dismiss Coleman's allegations on other grounds, we need not express an opinion regarding this argument.

**5.** As of the time of appeal, Ralph Coyle is no longer Warden at the Mansfield Correctional Institution.

lege Coyle ever authorized, supervised, or acquiesced to any beatings that might have taken place. Coleman's claim against Coyle is therefore one of respondeat superior.

■ Respondeat superior claims are not cognizable under § 1983. *See Monell v. Dept. of Social Servs. of New York,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For a supervisor to be liable, he must have "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). Therefore, absent any allegation of direct involvement or encouragement by Coyle, any cause against him cannot stand under the statute. Accordingly, the district court was correct in dismissing Coleman's claim as to Coyle.

## IV.

■ Coleman also seeks some ambiguous injunctive relief from the remaining two named Appellees, the State of Ohio and the ODRC.[6] First, Coleman finally concedes these named Appellees, as official branches of the State of Ohio are immune to § 1983 suits for monetary damages under the Eleventh Amendment to the Constitution. However, Coleman asserts these entities are not immune from injunctive relief.

Coleman is vague about the kind of injunctive relief he is seeking. Coleman asks this Court to order the State of Ohio or the ODRC to take appropriate actions to punish the individuals involved. This is not the type of injunctive relief this Court provides. The type of injunctive relief permissible under the Eleventh Amendment is preventative, not punitive. That is, this Court can grant injunctive relief only to prevent an impending harm. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Requiring the State to punish some unnamed prison guards does not necessarily prevent any future harm, and furthermore, such an order is not cognizable because it is likely violative of the prison guards' Due Process protections.

■ Next, Coleman wants this Court to issue an injunctive order making it clear such violations of prisoners' constitutional rights by corrections officers cannot and will not be tolerated. How Coleman wants us to make this clear is unknown. Apparently, Coleman wants an overbroad, blanket injunction enjoining the State of Ohio and the ODRC from violating prisoners' constitutional rights. An injunction serves as a judicial declaration that a specific policy or proposed plan of action may be violative of the constitutional rights of others. *See Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Here, there is no policy to enjoin. There are no regularly scheduled, state-approved, systematic beatings taking place. If there were, perhaps we could enjoin the practice, but absent a deliberate policy, no injunctive relief is available. *See Los Angeles v. Lyons,* 461 U.S. 95, 103–04, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). A blanket statement disapproving of violations of prisoners' Eighth and Fourteenth Amendment

6. Since the dismissal of the causes against Coyle, the ODRC, and the State of Ohio can be affirmed on other grounds, it is unnecessary to address whether these claims were also untimely. Each of these named defendants was properly and successfully served before dismissal of the second complaint, albeit at a time beyond the time limit granted for service under either the Ohio or Federal Rules of Civil Procedure. Accordingly, since these Defendants were served before dismissal, it would appear the Savings Clause would step in to save the claims against them. However, we decline to address this issue and instead affirm the dismissal of these Defendants on the grounds stated in this section.

rights is cumulative of the Amendments themselves and unnecessary. In any event, this request is a thinly veiled attempt to ask this Court to exact some kind of punitive measures upon the unnamed guards, which would "send a message" to the States not to randomly impose unprovoked beatings on their inmates. We find this outside the scope of this Court's jurisdiction and affirm the district court's decision denying each of Coleman's requests for whatever form of injunctive relief he is seeking in his brief.

## V.

For the foregoing reasons, we affirm the decision of the District Court for the Northern District of Ohio granting Appellees' Motion to Dismiss Coleman's third complaint as to all defendants.

**AFFIRMED.**