NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0071n.06

Nos. 17-3420/3422

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NICOLA RUHL and GARY RUHL, on their own behalf and on behalf of a minor; W.R., )
)
)
    Plaintiffs-Appellants, )
)
v. )
)
STATE OF OHIO HEALTH DEPARTMENT and RICHLAND COUNTY BOARD OF DEVELOPMENTAL DISABILITIES (17-3420 & 17-3422); WENDY GROVE (17-3422), )
)
)
)
)
    Defendants-Appellees.

**FILED**
Feb 12, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:    GUY, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  From May through December of 2013, the State of Ohio and local agencies refused to fund a behavioral therapy service for W.R., a minor child with autism subject to the protections of Part C of the Individuals with Disabilities in Education Act.  After finally approving W.R. for funding in December 2013, the defendants subsequently paid for fewer hours of this therapy than the maximum to which W.R. was entitled.  In the first of these consolidated cases, 17-3422, W.R. through his parents Nicole and Gary Ruhl challenged Ohio's refusal to fund that therapy service before December 2013, but an administrative hearing officer denied their claims and the district court affirmed that denial.  In the second case, 17-3420, the Ruhls sued over an alleged deficiency of services funded from December 2013 through April

2014, but that claim was dismissed as duplicative by the hearing officer and affirmed on those grounds by a different district judge. The first district court did not err in affirming the denial of the Ruhls' complaint regarding W.R.'s lack of funding from May through December 2013, because the Ruhls did not show that they were financially qualified for such payment before December, and their claims regarding Ohio's previous failure to fund such services were barred by the statute of limitations. However, W.R.'s second complaint, about insufficient delivery of services from December 2013 on, was not duplicative of the first complaint, because its claim of failure to deliver sufficient services presented a different issue from the previous denial of funding, and the complaint otherwise met IDEA Part C's pleading requirements. W.R. is thus entitled to continue to seek relief on the claims presented in his second complaint.

**I.**

This case deals with the unfortunate history of W.R., son of Gary and Nicola Ruhl born on June 13, 2011. W.R. has long been subject to various cognitive developmental disorders. In October, 2011, four months after birth, W.R.'s physician noted that W.R. exhibited torticollis, a condition where a child's head is inclined to one side. His physician therefore referred W.R. to the Ohio Help Me Grow ("HMG") program.

HMG is Ohio's vehicle for implementing the state's obligations under Part C of the Individuals with Disabilities Education Act. *See* 20 U.S.C. § 1435(a)(10); Ohio Rev. Code Ann. § 3701.61(A). Although the Ohio Department of Health ("ODH") is the lead agency responsible for administration of HMG, day-to-day implementation and management occurs at the county level. Because the Ruhls reside in Richland County, the Richland County Family and Children First Council was the administrator of HMG for W.R., and a county health services body, Richland Newhope (officially known as the Richland County Board of Developmental

Disabilities), coordinated and delivered agreed-to services to eligible participants. Thus, when W.R.'s physician first referred W.R. to HMG, Richland Newhope conducted an eligibility assessment, determined that W.R. was eligible for limited HMG services, and provided occupational therapy, physical therapy, and speech therapy to W.R. to treat his torticollis. Richland Newhope also tracked W.R.'s treatment on an Individualized Family Service Plan (IFSP). An IFSP is a written treatment plan for a child with disabilities, required by IDEA, stating the child's condition and listing the services for which a child is authorized. *See* 20 U.S.C. § 1436.

Starting in the summer of 2012 and into early 2013, W.R.'s developmental skills regressed. His physician referred W.R. to a local hospital, and on April 12, 2013, that hospital diagnosed W.R. with autism, as well as a mixed receptive-expressive language disorder. The hospital's diagnosis included recommendations that W.R. receive various intervention services, programs designed to teach an at-risk child various cognitive, social, and language skills. In particular, the hospital recommended that W.R. receive 25 to 40 hours per week of applied behavior analysis ("ABA"), a one-on-one teaching service designed to mold a child's behavior to improve cognitive functioning. If delivered in a timely fashion, ABA services can allow a child with a developmental disorder such as autism to overcome that disability and return to the path of expected growth. On June 12th, Richland Newhope added ABA services as a "goal" on W.R.'s IFSP.

After receiving W.R.'s diagnosis, Nicola Ruhl contacted both Richland Newhope and Wendy Grove, the latter the IDEA Part C coordinator for the Ohio state government. On May 2, 2013, Grove informed Ruhl that HMG did not fund ABA services on a recurring basis and notified her that there was an administrative complaint resolution procedure for IDEA Part C.

On June 20, 2013, Richland Newhope informed Ruhl that it also did not provide ABA services. The Ruhls instead began paying for ABA services from their own funds.

On September 5, 2013, following prompting from the federal Department of Education, HMG changed its policy of refusing to fund ABA services, and began offering payments for families meeting financial eligibility criteria. To qualify for public funding of ABA services, a family had to enter Ohio's Early Intervention System of Payments (EISOP) program, a scheme for public payment of services for families with an income below a certain threshold or expenditures above a defined level. A family qualifies for full payments of services under EISOP by either showing that the family's income is below a certain level—currently 185% of the federal poverty level—or that their expenditure on healthcare services exceeds the requisite levels for that family's income. *See* Ohio Admin. Code 3701-8-08.1(A).

On November 18th, the Ruhls applied to the Ohio Department of Health for EISOP funding for W.R.'s ABA services, but the department denied that application on November 26th, because the Ruhls were over the maximum income threshold to qualify for state funding. On December 3rd, the Ruhls again applied for EISOP funding, showing sufficient expenditures to qualify under the program's cost-share provision, and the department approved that application. HMG funded ABA treatments for W.R. from mid-December 2013 through April, 2014, when W.R. aged out of the program.

On September 18, 2014, the Ruhls filed a suit in the Northern District of Ohio, claiming violation of IDEA Part C by the Ohio Department of Health, the Richland County Board of Developmental Disabilities, and Wendy Gove, through their failure to provide W.R. with ABA services. The Ruhls' complaint presented claims under IDEA, the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983, and sought relief for both W.R. and the

class of children with his disabilities. The district court dismissed this complaint, on the grounds that IDEA required the Ruhls first to exhaust their administrative remedies. *W.R. v. Ohio Dep't of Health,* No. 1:14 CV 02075, 2015 WL 5092522, at *2 (N.D. Ohio Aug. 27, 2015) (citing 34 C.F.R. 303.448(e)). The Sixth Circuit affirmed the district court's dismissal on those same grounds. *W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 515, 520 (6th Cir. 2016), cert. denied sub nom. *W.R. v. Ohio Dep't of Health*, 137 S. Ct. 377 (2016).

On September 2, 2015, the Ruhls filed an IDEA Part C administrative due process complaint with ODH, alleging that W.R., along with all other children with autism in the State of Ohio, had systematically been denied ABA services, and thus were entitled to compensatory services to remedy the lack of ABA therapy at the appropriate time. The Ruhls specifically alleged that ODH had violated IDEA Part C through Ohio's previous policy of not paying for ABA therapy for children with autism. They sought "funding to the Ruhls for three years of compensatory services for [W.R.], reimbursement, and money damages." The hearing officer scheduled a hearing on these claims for December 7, 2015.

On December 3, four calendar days and two business days before the December 7 hearing, the Ruhls filed an additional due process complaint ("second complaint") against the Ohio Department of Health and Richland Newhope. This second complaint alleged that the defendants had violated W.R.'s IFSP in that they had "left the task of securing [ABA] services to [W.R]'s mother," and that there was a lack of ABA providers in the HMG system. The second complaint offered to combine itself with the original complaint filed on September 2, but the defendants opposed this combination, and the Ruhls did not request permission from the hearing officer to amend the original due process complaint to include this second complaint. Richland Newhope subsequently moved to dismiss the second complaint on the grounds that it was an

improper amendment of the Ruhls' first complaint. ODH also moved to dismiss on the grounds that the complaint did not state a cognizable claim under IDEA Part C, and failed to comply with regulatory requirements for a due process complaint to identify providers serving the child.

On December 22, the hearing officer dismissed the second complaint. The hearing officer first found that this complaint was duplicative of the first complaint, in that it "again addresses the appropriate provision of early intervention services to [W.R.] under IDEA Part C," and "contains the same issues of fact and the same parties as the original Due Process Complaint." The hearing officer also determined that the second complaint was not a proper amendment of the first complaint, because an amendment of a due process complaint under IDEA required either consent from the opposing party or filing five days before a hearing, and this second complaint qualified for neither category. The hearing officer thus concluded that a hearing on the complaint was not required, and granted Richland Newhope's motion to dismiss the complaint, because "it did not address an issue separate from a due process complaint already filed." The hearing officer did not reach ODH's argument about the insufficiency of the complaint or whether the claim was cognizable under IDEA Part C. The Ruhls appealed that dismissal to the U.S. District Court for the Northern District of Ohio.

On March 22, 2016, the same hearing officer also denied the Ruhls' initial complaint. The hearing officer first held that the Ruhls were time-barred from seeking relief for violations occurring before September 2nd, 2013, because IDEA Part C regulations include a two-year statute of limitations, *see* 34 C.F.R. § 303.443(e), and the hearing officer determined that the Ruhls had not pleaded evidence to support tolling that deadline. The hearing officer additionally dismissed Richland Newhope as a party, because the hearing officer decided that the Ruhls had not raised claims against Richland Newhope. Turning to the substance of the Ruhls' claims, the

hearing officer determined that ODH had not violated IDEA Part C, because the Ruhls had not introduced evidence that they had paid sufficient medical expenditures to make them financially qualified for EISOP payments prior to November, 2013, and the defendants were not required to provide payments for ABA services to financially ineligible families. Because the hearing officer held that the Ruhls bore the burden of proving that they were not provided appropriate services, the officer ruled that the Ruhls' failure to show eligibility for those services meant that they were not entitled to compensation for any lack of services. The Ruhls also appealed this dismissal to the Northern District of Ohio.

The district court hearing the Ruhls' first appeal, on the dismissal of their second administrative complaint, affirmed the dismissal of that complaint. The district judge, Judge Boyko, held that this second complaint covered the same ground as that of the first, in that the claims, parties, and remedies sought were the same, and "[t]he First Complaint broadly encompassed the denial of early intervention services for this two year period." Although recognizing that the second complaint nominally dealt with actions after ABA therapy was added to W.R.'s IFSP, Judge Boyko ruled that the first complaint encompassed this claim also, based on a statement in that first complaint, that the defendants "systemically continu[e] to deprive [W.R.] of compensatory services." Judge Boyko further held that there were sufficient alternative grounds to dismiss the Ruhls' complaint on the issue ODH had identified, the complaints' alleged failures to meet requirements under IDEA Part C, *see* 34 C.F.R. § 303.441, in that the complaint did not identify W.R.'s therapy providers, "failed to include a description of the problem of W.R. relating to the proposed or refused initiation or change," and sought an improper remedy of damages.

Before the second district court decided the appeal of the first administrative complaint, ODH moved to dismiss the Ruhls' ADA, Rehabilitation Act, and § 1983 claims. The district court, Judge Gwin, granted those motions, on the grounds that the ADA and Rehabilitation Act claims lacked the necessary element of causation because "W.R. was not treated differently than any other child entitled to services under IDEA Part C," and "Section 1983 is not available to remedy violations of IDEA because IDEA creates a comprehensive compensation scheme."

Also before that second district court, the Ruhls filed a motion to submit additional evidence, pursuant to 20 U.S.C. § 1439(a)(1). In particular, they proposed to submit a financial worksheet, showing the Ruhls' gross income, and the amount of the cost-sharing deductible necessary for a family at that income level to pay to qualify for EISOP. That motion did not, however, state that the worksheet would show when or if the Ruhls had met that deductible amount. The Ruhls also proposed to add testimony from various state officials and parents of children with autism, as well as testimony from two behavioral experts on ABA therapy and autism. The district court denied this motion to supplement the record on the grounds that the testimony was irrelevant, because it sought to litigate a claim of "'systemic deprivation on behalf of all children with autism," and "Plaintiffs' suit only concerns the wrongful deprivation of IDEA services to Plaintiff W.R." The court also rejected the proposal to submit the financial worksheet, because "there is already testimony and evidence regarding the family's financial eligibility."

After motions from the parties, Judge Gwin affirmed the hearing officer's denial of the Ruhls' original administrative complaint. Judge Gwin first held that the two-year statute of limitations under IDEA regulations applied to the Ruhls' claims, and so their filing of the administrative complaint on September 2, 2015 meant that they were not entitled to remedies for

violations before September 2, 2013. On the Ruhls' claims following September 2, Judge Gwin additionally found that the Ruhls had "failed to present evidence that they were financially eligible for publicly funded ABA therapy before November 2013," and so they had not shown any violations occurring before ODH began funding ABA services. Judge Gwin also determined that the Ruhls' claims for reimbursement were impermissible claims for money damages, and were thus improper.

The Ruhls appeal both decisions, and we consider the two cases together.

**II.**

Judge Gwin did not err in finding that Ruhls' first complaint, regarding their lack of payments under EISOP before December 2013, was subject to dismissal, because Ohio could condition these payments on a family's financial qualification for them, and the Ruhls did not show that they were eligible for these payments before December 2013. In particular, the Ruhls were eligible for EISOP funding to begin only after they had first spent a certain amount on medical services. The Ruhls first stated that they had reached this spending level in their December application, however, and there is no evidence in the record showing that they had achieved this level before that time. The defendants did not commit an IDEA Part C violation in not offering EISOP payments to a family who were not yet entitled to such payments. The Ruhls assert additional claims in their first complaint, but these also fail.

**A.**

Judge Gwin did not err in affirming the dismissal of the Ruhls' first complaint, because the Ruhls did not show that they were qualified for EISOP payments in the period before their December application. Ohio offered two pathways for a family to qualify for early-intervention services funding under EISOP: if a family's income was below a certain threshold, or if that

family showed they had expended a sufficient amount on healthcare services. Ohio Admin. Code 3701-8-08.1. IDEA Part C allows a state to "provid[e] for a system of payments by families, including a schedule of sliding fees." 20 U.S.C. § 1432(4)(B), *see also* 34 C.F.R. § 303.521. In this case, the Ruhls' income was above the threshold to qualify for payment under EISOP, and it was not until they submitted their application of December 3, 2013 that they showed their expenditures had reached the required levels. Because a family is not eligible for EISOP payments for early-intervention services unless financially eligible, *see* Ohio Admin. Code 3701-8-08.1, the defendants did not commit an IDEA Part C violation in not providing EISOP funding before the Ruhls showed their rights to such payments.

The Ruhls appear to contend most broadly that HMG had an obligation to make payments under EISOP even before the Ruhls had submitted their application showing their eligibility, but this is clearly not the case. A government can require a claimant to apply for benefits, such that no violation of an entitlement occurs if a person eligible for benefits does not apply and demonstrate his eligibility for them. *See Schweiker v. Hansen*, 450 U.S. 785, 790 (1981); *Hepke v. Harris*, 657 F.2d 100, 101 (6th Cir. 1981). Indeed, the Supreme Court has stated that "the normal assumption" is "that an applicant is not entitled to benefits unless and until he proves his eligibility." *Lavine v. Milne*, 424 U.S. 577, 584 (1976). Here, the Ruhls did not so prove their eligibility for payments under EISOP until they applied showing that they had met the cost-sharing levels required to qualify for payment by the state, and IDEA Part C allowed HMG to impose this eligibility requirement as a precondition to payment.

Although it is true that IDEA Part C generally favors ensuring payment for early intervention services, *see* 20 U.S.C. § 1431(b)(2), the statute also allows a state to "provid[e] for a system of payments by families, including a schedule of sliding fees." 20 U.S.C. § 1432(4)(B),

*see also* 34 C.F.R. § 303.521. It was therefore permissible for HMG to have asked the Ruhls to pay a share of medical expenses before HMG began payments for ABA therapy under EISOP, and for HMG to have required some proof of those expenditures before payment began.

It is also true that the Ruhls were asking for purely financial reimbursements for ABA services, rather than a right of access to those services themselves. Even before EISOP began its payments, the Ruhls were able to schedule ABA therapy from private providers and pay for it out of their own funds. This is therefore not a case where a state withheld a family's access to services until a family proved its inability to pay for them. *Cf.* Ohio Admin. Code 3701-8-08.1(B) (forbidding conditioning services on a parent's financial status). Nor do the Ruhls allege that lack of EISOP payments kept them from scheduling any time with ABA providers. Rather, the Ruhls sought reimbursements for the therapy they had paid for, and believed that additional payments would allow W.R. to receive additional hours of therapy. This request was a reasonable one, and such payments might well have benefitted W.R. At the same time, Ohio also had an interest in ensuring that its payments under EISOP went to families with the greatest financial needs. Because Ohio's EISOP eligibility guidelines are the means of effectuating that interest, *see* Ohio Admin. Code 3701-8-08.1, requiring the Ruhls to show their eligibility pursuant to these guidelines was a permissible prerequisite before state funding kicked in.

Where as here, an applicant seeks a purely financial benefit, it is well-established that a government can impose some minimum safeguards before paying out those benefits. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). It is for this reason that, in a case involving substantially similar facts, a district court considering whether IDEA Part C allowed the District of Columbia to require proof of a family's financial status held that: "[f]amilies in the District that receive services covered by Part C of the IDEA therefore are not automatically entitled to full

-11-

reimbursement of any associated costs, but must instead qualify as eligible for reimbursement under the District's schedule of fees." *Quinn v. District of Columbia*, 740 F. Supp. 2d 112, 126 (D. D.C. 2010). Simply put, the Ruhls' position that Ohio was obliged to make EISOP payments to them first and assess their qualifications later flies in the face of the usual assumptions about how a payment program like EISOP runs. It therefore did not violate W.R.'s rights under IDEA Part C for HMG to have required the Ruhls to apply for EISOP payments before beginning to make those payments, or for HMG not to have begun those payments until the Ruhls applied and demonstrated that they were eligible under Ohio's standards.

The Ruhls argue that their approval for EISOP payment in December proves that they were eligible for the program at points earlier in the year, given that their income was constant. But the record does not support the Ruhls' contention that they were eligible prior to December. Because the Ruhls' income was above the minimum level to qualify for payments based on income alone, their eligibility accrued only when they had spent the amounts of medical co-payments that their income level required of them. *See* Ohio Admin. Code 3701-8-08.1(A). The first evidence that the Ruhls reached that level of spending came when they submitted their December application, and the record does not contain any information about the Ruhls' medical spending before that date. The Ruhls appear to argue that, if they had spent the same amount on medical expenses and applied on the basis of those expenses earlier in the year, then they would have been qualified for EISOP payments at some point before December. While logically coherent, this argument is also irrelevant to the conclusion that the Ruhls were not eligible for

payments prior to December because they neither applied on the basis of such expenses nor have subsequently offered evidence to show such expenses existed prior to December.[1]

We acknowledge that a more diligent investigation by the defendants prior to December might have allowed them to identify expenditures qualifying the Ruhls for EISOP payments. Certainly, as the Ruhls point out, EISOP applications are "complicated," and frequently require assistance to complete. Indeed, the fact that the amount of the Ruhls' cost share was $2,625 suggests that a more diligent effort by defendants might have allowed them to help the Ruhls identify qualifying medical expenditures amounting to that level. Although the defendants' failure to assist the Ruhls in navigating the pathways under which they might have been eligible for EISOP payments thus hardly stands as a model of commendable public service, our task here involves only deciding whether the defendants committed a violation of IDEA Part C. Because the Ruhls do not show that the responsibility of applying for EISOP payments was anyone's responsibility other than theirs, their delay in submitting an application with the information necessary to show their eligibility for EISOP payments means that the defendants did not commit an IDEA Part C violation in not offering EISOP payments until that application arrived.

**B.**

Because the Ruhls were not entitled to payments for ABA therapy under EISOP until they had submitted an application showing their eligibility for those benefits to pay out, based on their medical expenditures actually incurred, they do not show any violation of IDEA Part C in defendants' non-payment before December. The Ruhls nonetheless claim that they should be allowed to sue for the period in which EISOP categorically did not pay for ABA therapy,

---

[1] Because the Ruhls did not demonstrate that they had reached the necessary level of spending to qualify for EISOP payments before their December application, we do not reach the issue of whether a family may claim reimbursements from a program like EISOP if they are qualified before the date of their application, but do not apply until well after their qualification has accrued.

although their counsel conceded at oral argument that a decision that the Ruhls were not eligible for EISOP payments until December would likely preclude this claim. While it may seem problematic to conclude that the Ruhls are barred from contesting a denial in May based on a funding standard not promulgated until September, we need not reach that conclusion here because the Ruhls' claims about the period in question are barred by the relevant statute of limitations.

Under the implementing regulations for IDEA Part C, a "due process complaint must allege a violation that occurred not more than two years before the date the parent or EIS provider knew, or should have known, about the alleged action that forms the basis of the due process complaint." 34 C.F.R. § 303.440. Ohio regulations likewise provide a two-year statute of limitations for administrative complaints under IDEA Part C. Ohio Admin. Code 3701-8-10(D)(6). Here, the Ruhls filed their first administrative due process complaint on September 2, 2015, and so the two-year statute of limitations meant that they could not claim for alleged violations occurring before September 2, 2013, the period including the time in which HMG categorically refused to fund ABA therapy through EISOP. The hearing officer and district court thus correctly held that the Ruhls could not maintain a claim based on ODH's denial of their initial request for funding for ABA therapy, because that denial occurred in May of 2013, a period outside of the statute of limitations.

The Ruhls propose a number of reasons why the statute of limitations should not apply to them, but none of their theories is correct. The Ruhls first argue that they are entitled to the benefit of an Ohio savings statute allowing a plaintiff to refile claims failing otherwise than on the merits, *see* Ohio Rev. Code § 2305.19(A), which they contend means the dismissal of their 2014 suit for failure to exhaust administrative remedies resets the limitation clock from the date

of that dismissal. This savings statute is, however, not applicable to a claim under IDEA Part C's statute of limitations. Where a claim based on is based on federal law, and that federal law has its own statute of limitations, it is straightforward that those limitations control. *See Burnett v. New York Central Railroad*, 380 U.S. 424, 432–33 (1965); *Johnson v. Railway Exp. Agency, Inc.*, 489 F.2d 525, 529–30 (6th Cir. 1973), *judgment aff'd,* 421 U.S. 454 (1975). Here, the Ruhls' claims are based on IDEA Part C, which has a two-year statute of limitations and no savings provision. *See* 34 C.F.R. § 303.440. The Ruhls' claims were thus subject to these limitations.

The Ruhls are also incorrect in arguing that a state limitation provision like a saving statute, governing claims under state law, equally applies to claims under federal law where a contrary statute of limitation already exists. *See Burnett*, 380 U.S. 432–33. As the Seventh Circuit has stated, where a plaintiff "asserts a purely federal claim, and is subject to a federal statute of limitations, state savings statutes do not apply." *Beck v. Caterpillar Inc.*, 50 F.3d 405, 407 (7th Cir. 1995) (collecting cases). It is true that a state savings statute can apply to a federal cause of action governed by a state statute of limitations. *See, e.g.*, *Coleman v. Dep't of Rehab. & Corr.*, 46 F. App'x 765, 769 (6th Cir. 2002) (applying a state savings statute to a claim under 42 U.S.C. § 1983). Where, as here, the applicable limitation is a federal one, a state savings statute like the Ohio one identified by the Ruhls cannot preempt that limit.

The Ruhls argue that IDEA Part C's statute of limitations do not preclude application of the Ohio savings statute because Part C's limitations were promulgated by regulation rather than established in IDEA's statutory text, but that is not a consequential difference. "[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369 (1986). Here, the

Department of Education had the statutory authority to establish minimum procedures for resolution of IDEA Part C claims, *see* 20 U.S.C. § 1439(a), and the establishment of time-limits for challenges was a valid exercise of that authority. IDEA Part C's time-limit is thus a federally imposed limitation, which controls over a state exception.

The Ruhls also point out that IDEA Part B contains an explicit two-year statute of limitations, while IDEA Part C does not, and so by implication, Congress must not have intended for a statute of limitations to apply to IDEA Part C claims. This argument fails, however, because it ignores Congress's vesting of the Department of Education with the right to establish procedures for IDEA Part C proceedings, *see* 20 U.S.C. § 1439(a), under which the Department had the power to establish an operative statute of limitations.

The Ruhls identify express exceptions in the federal statute of limitations allowing extension of time to file a claim beyond two years, but those exceptions are also not applicable to their case. The regulations implementing the statute of limitation extend the period to file in two circumstances: "[s]pecific misrepresentations by the lead agency or EIS provider that it had resolved the problem forming the basis of the due process complaint" and "[t]he lead agency's or EIS provider's failure to provide the parent information that was required under this part to be provided to the parent." 34 C.F.R. § 303.443(f). The Ruhls argue for the presence of the first exception here, on the grounds that HMG "had not disclosed to the family that HMG chose to disregard federal law." In fact, both HMG and Richland Newhope explicitly told the Ruhls that Ohio did not fund ABA services in May and June 2013, and so no misrepresentation occurred.

The Ruhls also argue that they were not provided "information that was required under this part," 34 C.F.R. § 303.443(f)(2), because IDEA Part C regulations include a requirement for adequate written notice of agency action, 34 C.F.R. § 303.421, and the Ruhls allege that this was

not provided to them. What notice was provided to the Ruhls is irrelevant, however, because the exception applies only if lack of such notice meant that the "parent was prevented from filing a due process complaint" by virtue of that lack of notice. 34 C.F.R. § 303.443(f). Here, the Ruhls possessed all the necessary information to assert their rights under IDEA Part C, as evidenced by their ability to file a lawsuit in September 2014 on the same grounds and information as they argue here. That their claim failed in that court because they asserted it in the improper venue does not demonstrate that any lack of information provided by defendants precluded the Ruhls from bringing a timely due process claim through the appropriate channels.

The Ruhls finally argue that equitable tolling should apply to their claim, but they do not show that choosing to file a claim in an inappropriate venue is sufficient reason to apply such tolling. This court has stated that equitable tolling is available only "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Here, the Ruhls face the two-year statute of limitations under IDEA Part C because they did not file their first administrative complaint until September 2015. That they filed then, and not in time, owed to factors entirely within their control, namely their decision to file first in federal district court.

Doubtless, the Ruhls might have cause to regret their first lawsuit, given its effect on their claims. Certainly, given the clear requirement for IDEA Part C claims to be submitted first to an administrative proceeding, *W.R. v. Ohio Health Dep't*, 651 F. App'x at 518, it is difficult to understand why they chose this particular tack. Whether W.R. was the victim of poor advice, an incorrect assessment of IDEA Part C's requirements, or simply a badly-calculated gamble on what forum would be most amenable to their complaint, the Ruhls do not present sufficient cause

for equitable tolling to apply to those claims. This is not to say that the behavior of the Ohio Department of Health deserves great commendation: after all, the basis of the Ruhls' complaint was a policy of refusing to fund any ABA therapy, a policy that the U.S. Department of Education subsequently deemed to be improper. Because that refusal took place outside the period of the statute of limitations, however, we are barred from addressing this matter.

On appeal, the Ruhls argue that they did not know until October 2013 that the federal Department of Education had recommended that Ohio fund ABA therapy, and thus they lacked the knowledge necessary to support an IDEA Part C claim until that time. This argument fails, however, because knowing the position of the U.S. Department of Education was not necessary for the Ruhls to realize that they had a claim. In a regime like the one at issue here, the Supreme Court has stated that it has "been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555, (2000). Wendy Grove provided the Ruhls on May 2, 2013 with the information that served as the basis for their cause of action: that HMG did not fund ABA therapy and that an objection could be made in through administrative process. That knowledge sufficed to make the Ruhls aware they had suffered an injury, and that they had a claim. The clock on litigating HMG's initial denial of ABA therapy to W.R. therefore began on May 2, 2013, and terminated two years later—before the Ruhls filed their first complaint.

## C.

The Ruhls further argue that the district court erred in refusing to allow them to supplement the record with various evidence that they allege would demonstrate an IDEA Part C violation, but Judge Gwin did not err in refusing to hear this evidence, because it did not show such a violation. The Ruhls appeal the exclusion of two pieces of evidence: a financial

worksheet showing the level of payments necessary to qualify a family of the Ruhls' income for

EISOP payment, and testimony of various witnesses on issues related to autism. That worksheet

apparently was, however, merely duplicative of evidence already in the record, and the testimony

of the other witnesses was irrelevant. With regard to all this evidence, although IDEA Part C

provides that, in an appeal of an administrative hearing, a district court "shall hear additional

evidence at the request of a party," 20 U.S.C. § 1439(a)(1), this court has emphasized that "the

determination of which additional evidence to allow rests within the sound discretion of the

district court." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 850 (6th Cir. 2004). The

district court did not abuse its discretion here when it excluded this evidence, because it did not

materially add to the Ruhls' claims.

Declining to supplement the record with the financial worksheet was not error because

the facts it proved were already in the record, and the worksheet did not otherwise demonstrate

the Ruhls' eligibility for EISOP services. In their motion to supplement the record, the Ruhl

stated that the worksheet showed what amount of the cost-sharing deductible qualified a family

at the Ruhls' income level for public payment through the EISOP, but they did not state that the

worksheet provided information about the Ruhls' spending levels, or any other information

specific to the Ruhls. The district court declined to supplement the record with the worksheet,

because information about Ruhls' general financial situation was already in the record, and there

was no controversy over what deductible level applied to the Ruhls. The Ruhls contend that the

financial worksheet was relevant because it showed that a family with their income who had paid

a certain amount of medical expenses was entitled to EISOP payments for further medical

expenditures. But the Ruhls were not entitled to such payments here because there was no

evidence that they had actually met the requisite spending level before their application, and the

worksheet, as described in their motion to introduce it, did not offer evidence on that point.[2] Because the worksheet as described thus did not speak to the missing part of the Ruhls' case— that they had spent enough to be financially eligible before the time of their application—the court did not abuse its discretion in declining to add it to the administrative record.

The district court also did not abuse its discretion in declining to add to the record the testimony from the other parents and expert witnesses on autism. The district court determined that both sets of testimony constituted improper attempts to litigate the purported systemic culpability of ODH in its treatment of children with autism, as opposed to the specific deprivation of IDEA services to W.R. A court need not supplement the record with irrelevant material. *See France v. Lucas*, 836 F.3d 612, 632 (6th Cir. 2016). On appeal, the Ruhls contend that this evidence was relevant because it purportedly showed how W.R. was injured by systemic misconduct by ODH. Yet because the Ruhls' claims about systemic culpability were limited by the statute of limitations, this theory of misconduct under which the testimony could be relevant—that ODH denied ABA therapy to W.R. because it had a systemic policy of denying such therapy—is time-barred. Testimony of other parents and of autism experts was not relevant to the Ruhls' remaining claim, that they were improperly denied EISOP payments before December 3rd, and the district court did not abuse its discretion in excluding it.

---

[2] The only evidence before Judge Gwin about what the worksheet contained was its brief description in the motion to supplement the record, which did not include the worksheet itself. The district court was thus required to decide the motion to supplement based on what facts were presented to it.

**III.**

The Ruhls brought various other statutory and constitutional claims, but Judge Gwin did not err by dismissing these claims, because the Ruhls did not plead facts sufficient to demonstrate the violation of any of these rights.

The Ruhls first challenge the dismissal of their American with Disabilities Act and Rehabilitation Act claims, but Judge Gwin correctly concluded that both claims failed for lack of alleged facts supporting causation. The Ruhls argued that the defendants had committed ADA and Rehabilitation Act violations when they did not fund ABA services for children with autism. The Ruhls did not, however, allege facts indicating that W.R. was treated any differently because of his specific disability: in other words, that but for W.R.'s autism, the defendants would have funded ABA services—or other services necessary for treating the relevant disability—for W.R. At most, the Ruhls argued that the defendants did not establish a system for funding ABA therapy, which particularly impacted persons with autism, for whom ABA therapy is an important treatment, but this is not a claim of discrimination because of a disability. As we have held, "[b]oth the Americans with Disabilities Act and the Rehabilitation Act require the challenged discrimination to occur *because of* disability, which is another way of saying that the plaintiff must establish a but-for relationship between the protested act and the individual's disability." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016). Where, as here, a plaintiff alleges no facts indicating that a plaintiff's disability caused acts to occur that would not otherwise have occurred but for that disability, those claims are subject to dismissal.

The Ruhls argue that disability discrimination occurred here because defendants did not allow W.R. to "achieve the life goals of IDEA Part C." Although this argument potentially pleads an IDEA Part C violation, it does not articulate a disability-discrimination claim unless,

but for W.R.'s having autism as opposed to another disability, the defendants would have so allowed him to achieve IDEA Part C's life goals. The Ruhls offer no evidence supporting that latter argument. The district court thus correctly dismissed the Ruhls' ADA and Rehabilitation Act claims.

The Ruhls finally challenge the dismissal of their § 1983 claims, but the claim is waived. In proceedings below, the Ruhls had pleaded the violation of W.R.'s civil rights both substantively, in the denial of funding for ABA therapy, and procedurally, in the lack of a pre-deprivation hearing. Judge Gwin, however, rejected these claims on the basis that "Section 1983 is not available to remedy violations of IDEA because IDEA creates a comprehensive compensation scheme." In their appellate brief, the Ruhls again repeat the substance of their § 1983 claim, *see* Ruhl Brief at 62–64,[3] but they do not address the dispositive point of the ruling below: that § 1983 does not allow claims for violations of IDEA. As we have stated, a failure to contest a basis for a lower court's judgment means "that ruling stands for purposes of this appeal." White *Oak Prop. Dev., LLC v. Washington Twp., Ohio*, 606 F.3d 842, 854 (6th Cir. 2010). The Ruhls here fail to contest the reason why they lost in the court below, and so Judge Gwin's ruling stands in this case. We emphasize, however, that this ruling stands solely because the Ruhls did not contest this issue on appeal, and we do not address the substance of Judge Gwin's reasoning in this respect.

---

[3] In their reply brief, the Ruhls state, without any additional support or argumentation that "IDEA does not provide exclusive rights and remedies." Ruhl Reply Brief at 19–20. This fact does not save the issue, not only because the statement is so perfunctory as to constitute waiver, *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007), but also because appellants forfeit any issues not contained in the opening brief, *Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006).

**IV.**

Turning to the Ruhls' second appeal, the appeal of Judge Boyko's denial of their second administrative complaint, the Ruhls are entitled to reversal, because that complaint was neither duplicative of the first complaint, nor failed to meet IDEA Part C's pleading standards.

Although the first and second complaints cover apparently similar ground, there is enough difference between the two that the district court erred in affirming the hearing officer's finding that the complaints were duplicative. In particular, the first hearing complaint raises the defendants' alleged general failure to permit ABA therapy under HMG, while the second specifically raises an alleged inadequacy of that therapy's provision to W.R. after his December 2013 authorization. To that point, in the first hearing complaint, the Ruhls' principal IDEA Part C cause of action stated that "Defendants Ohio and Grove unilaterally and categorically predetermined to withhold the early intervention service of applied behavior analysis therapy from W.R. (until December 2013)." By contrast, the second hearing complaint stated that it sought payments "for the difference between the amount of IFSP authorized ABA therapy and speech therapy for [W.R.] and the actual much lower amount Mrs. Ruhl was able to achieve for her son." On these facts, a categorical failure to offer ABA therapy is a different claim from not providing authorized therapy, and the claims do not substitute for one another.

A closer look at the structures of the two complaints further confirms that they deal with differing issues. The first hearing complaint contains extensive allegations about how ODH and Richland Newhope "refused to allow the Help Me Grow system to provide applied behavior analysis therapy until USDOE ultimately instructed Ohio," in May 2013. The first complaint thus repeatedly refers to defendants' failures with W.R. as continuing "until he turned 2 ½ years old"—that is, the time at which W.R. was approved for ABA therapy payments. By contrast, the

second hearing complaint, although scant, focuses on purported failures following W.R.'s approval for those payments. The second complaint states that defendants committed violations because they "left the task of securing [ABA] services to [W.R.]'s mother at a time when the HMG system first had no authorized service providers and then just one or two whose availability was delayed and/or intermittent." That second complaint takes as given the existence of EISOP funding through HMG and does not raise any issues occurring before HMG included ABA therapy, while the focus of the first complaint is the lack of such therapy before HMG so authorized it. Because the lack of any funding for ABA therapy and inadequate provision of that therapy are ultimately distinct issues, these issues are not duplicative.

The defendants offer several reasons why the second complaint is duplicative of that of the first, but none of these has merit. The Ohio Department of Health does not explicitly defend the decision on the basis that the complaints are duplicative, but it does state, in a one-sentence and arguably waived argument, that the second complaint "dealt with an alleged ongoing issue with the provision of ABA therapy." Except at the highest level of generality, however, this categorization is inaccurate. Lack of provision of authorized services is a different claim from a prior total failure to authorize those services, and it cannot be the case that having sued over some lack of provision of services in the past precludes a plaintiff from ever suing about a different issue relating to the delivery of those services in the future.

Richland Newhope, by contrast, squarely defends the decision below, arguing that the Ruhls' assertion in their first complaint that defendants "now systemically continues [sic] to deprive him of compensatory services" invoked violations occurring after W.R. received authorization for ABA therapy payments. This ambiguous and otherwise undeveloped sentence in the Ruhls' first administrative complaint contrasts with the remainder of the first complaint,

which focuses entirely on deprivation through total denial of ABA services, and does not mention—much less develop—the theory of liability based on inadequate provision advanced in the second due process complaint. The hearing officer thus erred in finding the second due process complaint duplicative of the first, and the district court erred in affirming that assessment.

**A.**

In addition to affirming the dismissal of the second administrative complaint on the grounds that it was duplicative, the district court also affirmed on the alternative grounds that this complaint failed to meet IDEA Part C's pleading requirements. Although a closer issue, the complaint, if somewhat opaque, did not violate the specific pleading requirements identified in IDEA Part C, and so the complaint is not subject to dismissal on those grounds either.

Under IDEA Part C regulations, a sufficient due process complaint must include, among other things, "[t]he name of the EIS provider serving the child," 34 C.F.R. § 303.441(b)(3); a "description of the nature of the problem of the child relating to the proposed or refused initiation or change." *id.* § 303.441(b)(5); and a "proposed resolution of the problem to the extent known and available to the party at the time," *id.* § 303.441(b)(6). Because all three elements were present, albeit in brief fashion, the complaint was on balance not subject to dismissal on grounds of insufficiency.

With respect to the first requirement to identify EIS providers, although the complaint did not "allege the names of the therapy providers for speech and ABA," the complaint did identify a EIS provider serving a child: Richland Newhope. It is true that the Ruhls' complaint did not identify the private therapy providers from whom W.R. had been receiving therapy services, but it is not clear why these providers would be necessary parties to this action, given that the

government presumably could not compel private providers to offer more hours of therapy to W.R. The more natural reading of § 303.441(b)(3) is that it requires a claimant to identify some EIS provider serving the child if available,[4] which the Ruhls did here in identifying Richland Newhope. This identification was thus sufficient to satisfy § 303.441(b)(3).

The complaint was also not insufficient under § 303.441(b)(5)'s requirement for a "description of the nature of the problem of the child relating to the proposed or refused initiation or change." The Third Circuit, in interpreting language in IDEA Part B identical to 34 C.F.R. § 303.441(b)(5), has held that this requirement means a complaint must do more than "merely identif[y] the problem"; it must also "provide a description of the *nature* of the problem that included facts." *M.S.-G. v. Lenape Reg'l High Sch. Dist. Bd. of Educ.*, 306 F. App'x 772, 775 (3d Cir. 2009). The Ruhls did so here in identifying the nature of the problem facing W.R.—he suffers from autism and would benefit from ABA therapy—and connecting it to some alleged violation by the defendants—that the defendants had "left the task of securing [ABA] services to [W.R.]'s mother at a time when the HMG system first had no authorized service providers and then just one or two whose availability was delayed and/or intermittent." By way of contrast, in *M.S.-G.*, the plaintiff had only identified a problem—that he had been suspended from school— but not alleged that the defendants had taken any inappropriate action or more generally violated his rights under IDEA. *See M.S.-G*, 306 F. App'x at 774–75. Although the Ruhls' second complaint was not extensive, it did identify the problem, the nature of the problem, and sufficient facts to comply with § 303.441(b)(5)'s demands.

Finally, the fact that the Ruhls' proposed resolution was payments for the additional hours allowable under the IFSP does not mean that their claim was insufficient under

---

[4] The defendants also do not explain how the requirement for a plaintiff to identify an EIS provider would operate in a situation like the one in the Ruhls' first claim, regarding a total lack of EIS services, where there would by definition be no provider available to identify.

§ 303.441(b)(6)'s requirement for a proposed resolution. While arguably inappropriate, as money damages are not available under IDEA, *see Hall v. Knott Cty. Bd. of Educ.,* 941 F.2d 402, 406 (6th Cir. 1991), IDEA does allow a plaintiff to request payments for expenses accrued because of an IDEA violation, *see Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386 (6th Cir. 1992). It might be that the Ruhls' claims are ultimately for damages rather than reimbursements, but this is an issue requiring some substantive assessment of their claims, and does not by itself render their administrative complaint void.

As defendants note, the Ruhls' claims might be deficient in more substantive ways. It is not clear that requiring parents to set up appointments for therapy services would be impermissible, given IDEA Part C's general policy in favor of empowering families in their individual capacities. *See, e.g.,* 20 U.S.C. § 1431(a)(4). Nor is it certain that the Ruhls would have any claim about a more general lack of ABA therapy providers in or around Richland County, because a government generally cannot compel service providers to exist or to offer a specific service. *Cf. Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1211 (6th Cir. 1997) (holding that the government could not compel a hospital to participate in Medicaid). Finally, it is not even evident that receiving fewer hours of therapy than the maximum for which W.R.'s IFSP stated the government would reimburse represents any violation of an entitlement, given an IFSP's identity as the "description of the *appropriate* transition services for the infant or toddler," 20 U.S.C. § 1436(a)(3) (emphasis added), as opposed to the set of "mandated" or "minimum" services.

These critiques speak to the substantive issue of whether the Ruhls' complaint articulates claims on which relief can be granted, not whether it complies with the necessary forms under IDEA Part C. It may be that an examination of the Ruhls' claims for, for example, failure to

state a claim, will require them to be dismissed. On whether the Ruhls' complaint complied with the formal procedural requirements for raising their claim under IDEA Part C, however, the answer is that it did, and thus the Ruhls are entitled a remand to continue their case.

## V.

The reversal and remand applies to the Ruhls' claims against the Ohio Department of Health, as well as Richland Newhope. Both were parties to the second complaint, and unlike in the case involving the first administrative complaint, the court below did not dismiss Richland Newhope as a party before it dismissed the complaint. On appeal, Richland Newhope argues that it has no liability for the claims presented in the second complaint because it "did not provide and had no contractual duty to provide ABA therapy." That issue is contested, however. Indeed, on the Ruhls' theory of the case, the fact that Richland Newhope did not provide ABA therapy is precisely why they are liable for the lack of therapy delivered to W.R., given that Richland Newhope was W.R.'s early intervention service coordinator. At this stage of the litigation, we do not address further whether Richland Newhope may be independently liable.

## VI.

The judgment in No. 17-3422, affirming the dismissal of the Ruhls' first complaint, is affirmed. The judgment in No. 17-3420, affirming the dismissal of the Ruhls' second complaint, is reversed and remanded for proceedings consistent with this opinion.