Robert E. Wier, United States District Judge
On December 19, 2017, Plaintiff Jack Estep filed this action in Harlan Circuit Court against Steve Combs, a Kentucky Department of Fish and Wildlife Resources (KDFW) officer, alleging various state law claims and a slate of 42 U.S.C. § 1983 violations. DE 1-1 (State Court Record). The suit stems from Combs's arrest of Plaintiff on December 21, 2016. DE 1-1, at 4. Combs, in his official capacity, noticed removal on January 26, 2018. DE 1 (Notice).
The defense moved to dismiss the individual (DE 9) and official (DE 10) capacity claims. The Court subsequently dismissed Combs in his official capacity on immunity grounds, but reserved decision on the individual capacity claims pending resolution of service concerns. DE 23 (Order). Subsequently, Defendant Combs mooted any Rule 4(m) issues by waiving service and entering a full appearance. Id. Accordingly, the Court returns to the individual capacity dismissal effort. DE 9.
The motion is fully briefed, DE 11 (Response), DE 17 (Reply), and stands ripe for review. For the following reasons, and under the applicable standards, the Court finds only partial dismissal warranted. The Court will permit Estep to proceed with two Fourth Amendment claims, under § 1983, and, under Kentucky law, false imprisonment and malicious prosecution claims.
I. BACKGROUND
Plaintiff seeks recovery under 42 U.S.C. § 1983 and various state law theories based on the following factual allegations:[1] Around 10:30 p.m. on December 21, 2016, Plaintiff Jack Estep received a call from his daughter-in-law, Victoria Estep. Mrs. Estep advised that Defendant Combs was harassing Plaintiff's son, Tim, at his home and was refusing to leave. She requested Plaintiff's assistance. Plaintiff arrived at his son's residence and found Defendant standing at the front door. Plaintiff told Combs that he needed to leave unless he had a warrant. Defendant then arrested Plaintiff. Combs tightly handcuffed Plaintiff. Estep claims the cuffs caused significant pain and suffering and resulted in *873 bruising on his wrists. He alleges that he asked Combs to remove or loosen the cuffs due to the pain and that Defendant refused. Plaintiff claims Combs left him in his vehicle outside the Harlan County Detention Center for an excessive period despite knowing the cuffs were causing pain. Plaintiff contends he was not engaged in any illegal activity when Combs arrested him, that he did not resist, and that there was no probable cause to justify the arrest. Nonetheless, Combs booked Plaintiff on charges of menacing, resisting arrest, and obstruction/interference with an officer. Ultimately, the Harlan District Court, on February 13, 2017, dismissed all charges for lack of evidence.
Plaintiff now pursues recovery, under § 1983, for Fourth, Fifth and Fourteenth Amendment violations and, under state law, for false arrest, false imprisonment, malicious prosecution, abuse of process, negligence, gross negligence, and intentional infliction of emotional distress (IIED).[2] Defendant pursues dismissal on three bases; Combs argues: (1) each claim, excepting IIED, is time-barred, DE 9-1, at 4, (2) he is entitled to qualified immunity, id. at 11, and (3) Estep fails to state a claim upon which the Court could grant relief, id. at 9.
Having reviewed the applicable record under the appropriate standards, for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.
II. DISMISSAL STANDARDS
To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *874 Bell Atl. Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "a formulaic recitation of a cause of action's elements will not do[.]" Twombly , 127 S.Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." Keys , 684 F.3d at 608. Yet, courts need not accept "legal conclusion[s] couched as [ ] factual allegation[s]." Papasan v. Allain , 478 U.S. 265, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).
Hinging on Rule 8's minimal standards, Twombly and Iqbal require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." Johnson v. City of Shelby , 574 U.S. 10, 135 S.Ct. 346, 347, 190 L.Ed.2d 309 (2014). Where plaintiffs state "simply, concisely, and directly events that ... entitled them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" Id. ; El-Hallani v. Huntington Nat. Bank , 623 F. App'x 730, 739 (6th Cir. 2015) ("Although Twombly and Iqbal have raised the bar for pleading, it is still low.").
Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a ... motion to dismiss." Weiner v. Klais and Co., Inc. , 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." Ashland, Inc. v. Oppenheimer & Co. , 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). While a statute of limitations defense is not typically appropriate for consideration as part of a 12(b)(6) motion, such defense may prevail "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." Andonissamy v. Hewlett-Packard Co. , 547 F.3d 841, 847 (7th Cir. 2008) ; Marsh v. Genentech, Inc. , 693 F.3d 546, 554-55 (6th Cir. 2012) ("A motion to dismiss can be premised on an affirmative defense ... if 'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.' " (internal citation omitted) ).
III. ANALYSIS
The Court has fully reviewed the record and finds, in the circumstances, partial dismissal warranted. As detailed below, Defendant's particular statute of limitations challenge fails at the dismissal stage. Combs is not-on the current record-entitled to qualified immunity, and Plaintiff has adequately pleaded two federal and two state law claims.
A. Statutes of Limitation
The parties do not dispute the applicable limitations periods. For § 1983 claims, federal courts borrow forum states' personal injury statutes of limitation. See Wilson v. Garcia , 471 U.S. 261, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Here, the relevant statute surely is the one-year limitation period provided by KRS 413.140. Ham v. Marshall Cty., Ky. , No. 5:11-CV-11, 2012 WL 5930148, at *3 (W.D. Ky. Nov. 27, 2012) (citing Collard v. Ky. Bd. of Nursing , 896 F.2d 179, 182 (6th Cir. 1990) ). Kentucky law required Plaintiff to "commence[ ]" his claims[3] "within one (1)
*875 year after the cause[s] of action accrued[.]" KRS 413.140(1)(a) & (c). "[A] claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends." Fox v. DeSoto , 489 F.3d 227, 233 (6th Cir. 2007). The Commonwealth's civil rules provide: "A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." CR 3.01.[4]
Combs recently waived service. See DE 26. However, Defendant claims that Plaintiff did not initially pursue service in "good faith," as required-under Kentucky law-to commence an action. See Isaacs v. Caldwell , 530 S.W.3d 449, 456 (Ky. 2017) ("The timely issuance of the summons, however, does not mean that Appellants' action commenced within the statutory limitation period. CR 3.01 requires not simply 'the issuance of the summons;' it requires 'the issuance of the summons in good faith. ' ... The good faith essential for the commencement of the action has long been construed to require a contemporaneous intention on the part of the initiating party to diligently attend to the service of the summons." (emphasis in original) ). Per Combs, the initial summons, issued December 19, 2017 (DE 1-1, at 3), could not have been issued in good faith because it was directed to Combs at the KDFW headquarters in Frankfort, Kentucky. DE 9-1, at 7-8. The Complaint, Defendant notes, explicitly alleged that Combs was a Harlan County resident. DE 1-1, at 4 ("The Defendant ... is believed by the Plaintiff to be a resident of Harlan County, Kentucky.").
*876 Similarly, Combs contends the March 29, 2018, generic federal summons, stating that Defendant's "Specific Address [was then] undetermined" also failed to commence the action for limitations purposes. DE 8 (Summons).[5] Consequently, Defendant argues that the claims arising out of the December 21, 2016, arrest are time barred.
Estep contends that the initial summons "was issued with the address of the main office ... with the good faith belief that the Defendant ... would be notified by his supervisory office of attempted certified mail service so that he could elect to receive the mailing and be informed of the litigation." DE 11, at 2. Plaintiff also details ultimately unavailing efforts-both pre-and post-Complaint filing-to ascertain Defendant's address. See DE 11, at 2. The record (indeed, the dismissal effort itself) indicates that Combs was, in fact, ultimately advised of the pending litigation.
The determinative question is whether Estep pursued a summons with "a bona fide, unequivocal intention to have it served or proceeded on presently or in due course or without abandonment." Louisville & N.R. Co. v. Little , 264 Ky. 579, 95 S.W.2d 253, 255 (1936). Yet, the Court, at the 12(b)(6) dismissal stage, considers only the pleadings. Combs's theory, that the Complaint facially establishes an absence of good faith, makes too much out of a factual discrepancy. The fact that Estep sent the summons to a county where he did not believe Combs resided hardly is conclusive for the "good faith" inquiry. Combs, at least implicitly, acknowledges this by submitting an affidavit related to the issue.[6]
"[T]he taking out of the summons ... was presumptive evidence of an intention to have it served in due course." Rucker's Adm'r v. Roadway Express, Inc. , 279 Ky. 707, 131 S.W.2d 840, 842 (1939). The pleading itself, the Complaint, shows filing within one year of the earliest accrual date. The summons and mailing receipt are part of the removal papers. They show summons issuance by the Harlan Circuit Clerk with certified mailing to Combs at the supplied address, the Department's office in Frankfort. DE 1-1, at 2-3. The clerk and initiating plaintiff each have duties under CR 4.01, but the clerk must issue the summons and mail it appropriately. See CR 4.01(1) ("Upon the filing of the complaint ... the clerk shall forthwith issue the required summons and, at the direction of the initiating party .... [p]lace a copy of the summons and complaint ... to be served in an envelope, address the envelope to the person to be served at the address set forth in the caption ..., affix adequate postage, and *877 place the sealed envelope in the United States mail as registered mail or certified mail return receipt requested with instructions to the delivering postal employee to deliver to the addressee only and show the address where delivered and the date of delivery."). Here, Combs's complaint is that Estep requested service by mail to Combs at Department HQ, rather than at a residential address. The Court sees no prohibition on that effort by Estep, which might or might not be successful to actually effect service. Cf. CR 5.02 (defining "[d]elivery of a copy"-for service purposes-to include "leaving [a copy] at the office of the ... party with the person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein"). An employee could sign for a certified mailing at his company workplace, and at most, the Court sees any inaccuracy as but potential negligence regarding service mechanics. Negligence alone is insufficient "to negate a lack of good faith at the time the summons was issued or to indicate abandonment of intention to have it executed in due course." Rucker's Adm'r , 131 S.W.2d at 843 ; see also CPC Livestock, LLC v. Fifth Third Bank, Inc. , 495 B.R. 332, 344 (W.D. Ky. 2013) ("Good faith can be, and usually is, something less than perfection or complete accuracy, and above all, it means not to take advantage of, not to deceive, not to be underhanded." (internal quotation marks omitted) (quoting Roehrig v. Merchs. & Businessmen's Mut. Ins. Co. , 391 S.W.2d 369, 370 (Ky. 1965) ) ). Further, the Court is unable to tell, from this record, whether the clerk alone made the decision to mail in a manner not consistent with the rule, i.e. , without the restricted delivery requirement.
"While statute of limitations ... issues are susceptible to resolution on a motion to dismiss if a plaintiff affirmatively pleads himself out of court ..., a plaintiff need not respond to a motion to dismiss with affirmative matter raising a triable issue of fact on an affirmative defense." Rembisz v. Lew , 590 F. App'x 501, 504 (6th Cir. 2014). Affirmative defenses "requiring resort to matters outside the pleadings, such as affidavits or documentary evidence" are "best raised in a motion for summary judgment." Jackson v. Aramark , No. 3:17-CV-P322-DJH, 2017 WL 4288921, at *1 (W.D. Ky. Sept. 27, 2017) (internal citations omitted). The at-issue affirmative defense-necessitating consideration of, inter alia , a party's intent when a summons was issued-will require resort to sources and proof not yet properly before the Court. See, e.g. , Isaacs , 530 S.W.3d at 456 (considering whether plaintiff "act[ed] diligently with a substantial effort to secure service of the summons"); see also id. at 457 ("[A]n action may be commenced in good faith even if the attorney does not immediately serve the summons ... depending on the reason for the delay."); Rucker's Adm'r , 131 S.W.2d at 843 (declining to find bad faith service delay where plaintiff's attorney was attempting to discern the proper service agent, his wife fell ill for several weeks, and summons was misfiled).
Again, affirmative-defense-based 12(b)(6) dismissal is only warranted "when the facts are definitively ascertainable from the pleadings and conclusively establish the affirmative defense." Walburn v. Lockheed Martin Util. Servs., Inc. , 443 F. App'x 43, 47 (6th Cir. 2011). What the extra-pleading record says about Estep's service pursuit is the crux of this affirmative defense. Yet, for purposes of Defendant's motion, the Federal Rules deem those facts beyond the ken of a 12(b)(6) effort. Fed. R. Civ. P. 12(d) ("If, on a [12(b)(6) motion], matters outside the pleadings are presented to and not excluded *878 by the court, the motion must be treated as one for summary judgment[.]" (emphasis added) ). The Court, constrained as it is at this early stage, rejects the statute of limitations argument as premature.[7]
B. Qualified Immunity
Next, Combs contends the federal claims should be dismissed on qualified immunity grounds. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald , 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ; see, e.g. , Ortiz ex rel. Ortiz v. Kazimer , 811 F.3d 848, 850 (6th Cir. 2016) (affirming denial of qualified immunity to officers based on conflicting testimony); Robertson v. Lucas , 753 F.3d 606, 610 (6th Cir. 2014) (affirming grant of qualified immunity to state and federal law enforcement officers); Barnes v. Wright , 449 F.3d 709, 711 (6th Cir. 2006) (reversing the denial of qualified immunity to law enforcement officers in a § 1983 suit). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth , 472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).
To evaluate the qualified immunity question, courts engage in a two-part inquiry: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official]'s conduct violated a constitutional right? Second, is the right clearly established?" Silberstein v. City of Dayton , 440 F.3d 306, 311 (6th Cir. 2006) ; see also Pearson v. Callahan , 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (holding that courts may address the two questions in either order).
The right must be "so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." Johnson v. Moseley , 790 F.3d 649, 653 (6th Cir. 2015). The Court must avoid "a high level of generality" in assessing the clarity of the right or misconduct. Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam ) ("The dispositive question is whether the violative nature of particular conduct is clearly established.... This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotation marks omitted) (citing Brosseau v. Haugen , 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) ) ). Here-as to both the handcuffing and false arrest allegations-the Court answers both prongs of the inquiry affirmatively and rejects immunity-based dismissal.
*879 The answer to the first question is yes. The facts alleged, viewed in the light most favorable to Estep, would show two Fourth Amendment violations. Estep alleges-and the Court, as it must, accepts this as true at this point in the case-that Combs arrested him, essentially, because he told Combs he needed to leave his son's residence unless he had a warrant. See DE 1-1, at 5 ¶¶ 7-8. Those allegations-describing a warrantless arrest based only on a simple statement-alone are likely sufficient to clear the low-slung dismissal bar.[8] Plaintiff further claims (1) he was not doing anything illegal, (2) that he did not actively resist arrest, (3) that Combs had no probable cause or reasonable suspicion to believe any illicit activity was afoot, and (4) that the Harlan District Court ultimately dismissed all charges against Estep for lack of evidence. Id. at 6 ¶ 14, 8 ¶¶ 24- 25. Estep had, at a minimum, a "Fourth Amendment right to be arrested only upon probable cause." Crockett v. Cumberland College , 316 F.3d 571, 580 (6th Cir. 2003). If the Court assumes, as it must, that Estep paints an accurate picture of the December 21, 2016, events, Combs would not have had probable cause to arrest Estep, and the seizure violated Plaintiff's Fourth Amendment rights. Combs surely disputes this account, but the Court now considers only Estep's narrative.[9]
*880 Likewise, Estep's handcuffing allegations state a valid Fourth Amendment excessive force claim. Plaintiff contends that Combs: (1) handcuffed him tightly enough to cause significant physical pain and bruise his wrists, (2) declined to remove or loosen the cuffs despite Plaintiff's request, and (3) deliberately extended Estep's suffering by leaving him cuffed in Defendant's vehicle outside the Harlan County Detention Center for a lengthy period. DE 1-1, at 6. The Sixth Circuit "applies the Fourth Amendment's unreasonable seizure jurisprudence when analyzing" unduly tight handcuffing allegations. Baynes v. Cleland , 799 F.3d 600, 607 (6th Cir. 2015) (internal citations omitted). Officers making an arrest have "the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor , 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). However, officers may not, consistent with the Fourth Amendment, use excessive force.
"[E]xcessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment[.]" Courtright v. City of Battle Creek , 839 F.3d 513, 518- 19 (6th Cir. 2016) (internal citations and quotation marks omitted). The Sixth Circuit has identified three elements for an unreasonably tight handcuffing claim: (1) the plaintiff "complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." Morrison v. Bd. Of Trustees Of Green Twp. , 583 F.3d 394, 401 (6th Cir. 2009) (citing Lyons v. City of Xenia , 417 F.3d 565, 575-76 (6th Cir. 2005).[10] Here, taking Estep's "factual allegations as true, as this court must on ... [a motion to dismiss], it does not appear beyond doubt that the plaintiff cannot prove that the officers' conduct was unreasonable." Kostrzewa v. City of Troy , 247 F.3d 633, 640 (6th Cir. 2001) (internal citations omitted). Per the pleading, Estep complained about overtightened cuffs, and Combs ignored Plaintiff's protests (and worse, prolonged exposure unnecessarily). Consequently, Estep suffered bruising and significant pain. In short, Estep's factual allegations, accepted as true, adequately support two Fourth Amendment violations-for false arrest and for excessive force.
*881 The answer to the second question is also yes. Estep's rights to be free from excessively forceful handcuffing and arrests absent probable cause were pellucidly established long before the events in question. Defendant's attempt to dispute the clarity of a prohibition against an utterly baseless arrest rings hollow. "[I]t is clearly established that an arrest without probable cause violates the Fourth Amendment." Thacker v. City of Columbus , 328 F.3d 244, 260 (6th Cir. 2003) ; see generally, e.g. , Butts v. City of Bowling Green , 374 F.Supp.2d 532 (W.D. Ky. 2005). Stated otherwise, "the law [i]s clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." Radvansky v. City of Olmsted Falls , 395 F.3d 291, 310 (6th Cir. 2005).[11] Likewise, the Sixth Circuit has explicitly held that "freedom from excessively forceful or unduly tight handcuffing is a clearly established right for purposes of qualified immunity." Courtright , 839 F.3d at 519 (internal citations and quotation marks omitted).
Given the Complaint's allegations and the clear underlying law, the qualified immunity argument fails as to the improper arrest and improper seizure theories.
C. Failure to State a Claim
Finally, Combs generally alleges that Estep's claims fall short of federal pleading[12] standards. DE 9-1, at 9 ("The Plaintiff's Complaint Is Not Pled With Sufficient Specificity."). To survive dismissal, the Complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." D'Ambrosio v. Marino , 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted). Defendant claims the Complaint "is very vague and consists mostly of conclusory allegations." DE 9-1, at 10. Ironically, Defendant's argument, itself, suffers from the very deficiency it claims the Complaint presents. That is, Defendant expends little (or no) effort in developing any specific elemental criticisms regarding the Complaint language. Combs does not identify *882 the material elements for any of Plaintiff's claims or point to any purportedly missing essentials. Indeed, the section of Defendant's memorandum that pursues dismissal for lack of Complaint specificity contains not one citation to a specific portion of the pleading. See DE 9-1, at 9-11. This alone is a denial basis.
Combs paints the Complaint with a broad brush, generally arguing that Estep's claims are rooted in generalities or mere boilerplate. Yet, Defendant bears the dismissal burden; it was up to Combs to take aim at specific infirmities in Plaintiff's claims. "It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." Brenay v. Schartow , 709 F. App'x 331, 336 (6th Cir. 2017) (internal citations and quotation marks are omitted); see also United States v. Dunkel , 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). For instance, Combs states that a "complaint that simply names a person as a defendant without alleging specific conduct by that individual is subject to summary dismissal as frivolous." See DE 9-1, at 10. True enough, as a general proposition, but Defendant fails to explain why that general statement applies to a pleading that alleges numerous Combs acts. Instead, Defendant "leave[s] it to the court to seek out the relevant law, identify the relevant [factual allegations], and develop the argument for him." Brenay , 709 F. App'x at 336. It was Defendant's job to construct a dismissal argument; generalized recitation of Rule 12(b)(6) precedent, unadorned by any "effort at developed argumentation" falls short. McPherson v. Kelsey , 125 F.3d 989, 995 (6th Cir. 1997).
Thus, the Court rejects Defendant's facial plausibility challenges to Plaintiff's § 1983, false imprisonment, and malicious prosecution claims as inadequately developed. The Court could, based on Defendant's motion, extend this finding to the full claim slate. Yet, the Court, in an effort to avoid needless discovery, has reviewed all claims for viability. As detailed below, the Court finds that Estep's abuse of process, IIED, negligence, and gross negligence claims fail as a matter of law. As for the remaining claims, the Court finds 12(b)(6) motion denial independently warranted on the merits.
i. Constitutional Claims
The Fourth Amendment, not the Fifth or Fourteenth,[13] is the proper vehicle to "define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." Radvansky , 395 F.3d at 313 (internal citations omitted) ("[S]ubstantive due process does not extend to claims for false arrest and ... such claims are properly brought under the Fourth Amendment."); Kustes v. Lexington-Fayette Urban Cty. Gov't , No. CIV.A. 5:12-323, 2013 WL 4776343, at *2 (E.D. Ky. Sept. 3, 2013) (Caldwell, J.) (dismissing Fifth and Fourteenth Amendment claims for pretrial deprivation of liberty). Thus, to the extent Estep challenges the arrest on Fourteenth or Fifth Amendment grounds, the claims fail as a matter of law.
The Court finds that Estep adequately pleaded two Fourth Amendment claims-false arrest and excessive force. A valid unlawful arrest claim under § 1983 must include an allegation "that the police lacked probable cause." Fridley v. Horrighs , 291 F.3d 867, 872 (6th Cir. 2002) ; see also *883 Devenpeck v. Alford , 543 U.S. 146, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004) ("[A] warrantless arrest ... is reasonable ... where there is probable cause to believe that a criminal offense has been or is being committed.").[14] The probable cause determination "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck , 125 S.Ct. at 593. As discussed in the qualified immunity analysis above, the Complaint allegations (as to lack of probable cause) suffice.
Similarly, Plaintiff has adequately claimed excessive force. Based on the Complaint allegations, "none of the specific [Graham ] factors ... weigh in favor of a greater use of force." Kostrzewa v. City of Troy , 247 F.3d 633, 639 (6th Cir. 2001). Estep's arrest was, under the pleadings, essentially baseless. Thus, the purported crime severity was irrelevant, Plaintiff did not resist arrest, and nothing indicated that Plaintiff was violent. As further explained in the qualified immunity analysis above, Estep's allegations satisfy the Sixth Circuit's handcuffing claim elements.
ii. False Arrest / Imprisonment
The Complaint includes state false arrest and false imprisonment theories. When, as here, a law enforcement officer is the alleged tortfeasor, Kentucky collapses claims of false arrest and false imprisonment. Dunn , 2005 WL 736596, at *2 ("False imprisonment is always the result of a false arrest, since the individual is placed under restraint by the false arrest and there can be no imprisonment without arrest by a peace officer."). Thus, the Court consolidates the redundant false arrest claim and considers the claims "together as false imprisonment." Dunn v. Felty , 226 S.W.3d 68, 71 (Ky. 2007) (hereinafter Dunn II ). The claim survives dismissal for much the same reasons as its federal counterpart.
Here, Combs's warrantless arrest[15] of Plaintiff is actionable as a false imprisonment if Defendant lacked "probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." Id. (internal citations omitted). The Court *884 will not belabor a point already addressed. The Complaint allegations viewed in the light most favorable to Estep belie the existence of probable cause and state a valid false imprisonment claim.
iii. Malicious Prosecution
A Kentucky malicious prosecution claim has five elements: "1) the defendant initiated, continued, or procured a criminal ... proceeding ... against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; ... 4) the proceeding ... terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding." Martin v. O'Daniel , 507 S.W.3d 1, 11-12 (Ky. 2016). The Complaint explicitly alleges facts to satisfy the first, fourth, and fifth elements. Estep paints Combs as the only involved officer, claims Estep committed no crime, and contends that Combs initiated proceedings (causing him emotional distress, humiliation, and shame, DE 1-1, at 10 ¶ 38) that the state court dismissed.[16] Estep also alleges malice and absence of probable cause, but legal conclusions are not entitled to a presumption of truth. Nonetheless, the Court, under the circumstances, views the prior analysis regarding arrest probable cause as determinative for the prosecution probable cause inquiry. The same allegations that underlie the Court's finding as to the false arrest claim's viability also support, at this early stage, a plausible malicious prosecution claim. An arrest without probable cause followed by a prosecution (on the same charges) with nothing in the pleadings to suggest additional proof of illicit conduct justifies, to the Court, an inference that the proceedings were initiated in the absence of probable cause. The cited dismissal for lack of evidence cinches the finding.
Further, "[u]nder Kentucky law, 'malice can be inferred from a lack of probable cause.' " Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't , 918 F.Supp.2d 654, 665 (W.D. Ky. 2013) (quoting Massey v. McKinley , 690 S.W.2d 131, 134 (Ky. Ct. App. 1985) ). Plaintiff additionally alleges Combs utilized process for several "ulterior purpose[s,]" which independently satisfies the malice element here. See DE 1-1, at 9 ¶ 30. Accordingly, the Court finds that Estep adequately pleaded his malicious prosecution claim.
iv. Abuse of Process
On the other hand, the Court finds dismissal appropriate for the abuse of process claim.[17] In Kentucky the "essential elements of an action for abuse of process are (1) an ulterior purpose and (2)
*885 a willful act in the use of the process not proper in the regular conduct of the proceeding." Simpson v. Laytart , 962 S.W.2d 392, 394 (Ky. 1998) (internal citations omitted). Assuming, without deciding, for purposes of this motion, that Estep adequately alleged an "ulterior motive,"[18] the Complaint fails to allege that Combs did anything "more than carry out the process to its authorized conclusion." Id. at 395. The irregular use element "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself ... [t]here is, in other words, a form of extortion[.]" Id. (quoting W. Prosser, Handbook of the Law of Torts , § 121 (4th ed. 1971) ). "Indeed, we must look for '[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process[.]' " Garcia , 400 S.W.3d at 277 (internal citations omitted). Estep alleges no post-arrest Combs conduct or intent consistent with the second element of an abuse of process claim. Compare Simpson , 962 S.W.2d at 394-95 ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." (internal citation omitted) ), with Williams v. Sandel , No. CV 08-04-DLB, 2010 WL 11538240, at *2 (E.D. Ky. Feb. 12, 2010) ("Plaintiff further alleges that the Commonwealth Attorney's office 'indicated to criminal defense counsel ... the charges would be dropped if Plaintiff dropped this civil lawsuit.' "); Cherry v. Howie , No. 5:14-CV-00179-TBR, 2017 WL 1146960, at *2 (W.D. Ky. Mar. 27, 2017) ("A jury could reasonably infer that Ms. Pryor received input from or was influenced by the Defendants when she utilized the judicial process to prevent Ms. Cherry from holding public office in the City of Hopkinsville."). Accordingly, the abuse of process claim fails as a matter of law.
v. [Gross] Negligence
In Kentucky, to establish negligence, a plaintiff must prove "that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." Pathways, Inc. v. Hammons , 113 S.W.3d 85, 88 (Ky. 2003). " 'Consequent injury' consists of what hornbooks separate into two distinct elements: actual injury or harm to the plaintiff and legal causation between the defendant's breach and the plaintiff's injury." Id. at 88-89.[19] "Duty, the first element, presents a question of law. Breach and injury, are questions of fact for the jury to decide. The last element, legal causation, presents a mixed question of law and fact." Id. at 89 (citations omitted). "The standard of care applicable to a common-law negligence action is that of ordinary care-that is, such care as a reasonably prudent person would exercise under the circumstances." Wright , 381 S.W.3d at 213 (internal quotation marks removed).
A Kentucky (common law) gross negligence claim has two elements: (1) "a finding of failure to exercise reasonable care" and (2) "an additional finding that this negligence was accompanied by *886 wanton or reckless disregard for the lives, safety, or property of others."[20] Gibson v. Fuel Transport, Inc. , 410 S.W.3d 56, 59 (Ky. 2013). A successful gross negligence claimant may recover punitive damages. See Williams v. Wilson , 972 S.W.2d 260, 262-63 (Ky. 1998) (describing development of Kentucky gross negligence law as a mechanism for recovery of punitive damages). Gross negligence is measured objectively. See generally id. (upholding continued availability of punitive dames "upon a finding of gross negligence as measured by an objective standard"). "Even where a single act of negligence might not constitute gross negligence, gross negligence may result from [ ] several acts." Horton v. Union Light , Heat & Power Co. , 690 S.W.2d 382, 388 (Ky. 1985) (quoting Brown v. Riner , 500 P.2d 524, 528 (Wyo. 1972) ).
This District has previously addressed negligence claims in a similar context, and the Court finds Judge Reeves's thoughtful analysis apt here:
A [ ]plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim. Tunne v. Paducah Police Dep't, No. 5:08CV-188-R , 2010 WL 323547, *11 n.4 (W.D. Ky. Jan. 21, 2010) (citing Hill v. Willmott , 561 S.W.2d 331, 334 (Ky. Ct. App. 1978) ). The same reasoning applies to a negligence claim based on false arrest. See Lewis v. Laurel Cnty. Sheriff's Dep't , No. 09-280-GFVT, 2011 WL 3475370, *6 (E.D. Ky. Aug. 8, 2011). Otherwise a plaintiff would "avoid the higher standards" associated with those claims. Tunne , 2010 WL 323547, at *11 n.4. Likewise, a plaintiff's gross negligence claim cannot succeed if it is truly a false arrest or malicious prosecution claim. See Lewis , 2011 WL 3475370, at *6. Because Jones' negligence and gross negligence claims are based "on the same conduct discussed in relation to [his] claims of false arrest and malicious prosecution," the claims fail to withstand a motion to dismiss. See id.
Jones v. Clark Cty. , No. CV 5:15-337-DCR, 2016 WL 4146119, at *9 (E.D. Ky. Aug. 3, 2016) (footnote omitted), rev'd and remanded on other grounds , 690 F. App'x 334 (6th Cir. 2017) ; see also Tunne , 2010 WL 323547, at *11 n.4 (quoting Bertram v. Fed. Exp. Corp. , Civil Action No. 05-28-C, 2008 WL 170063, at *6 (W.D. Ky. Jan. 17, 2008) for the same malicious prosecution proposition). Here, as in Jones , Estep's negligence and gross negligence claims do not clear the dismissal bar because they rely "on the same conduct discussed in relation to [his] claims of false arrest and malicious prosecution." Jones , 2016 WL 4146119, at *9.
vi. Outrage / IIED
Defendant, pursuing dismissal of Estep's IIED claim, alleges the tort is not available to Plaintiff in this context. DE 9-1, at 9. The Court, ultimately, finds IIED dismissal appropriate-though on grounds separate from those Defendant presses. Kentucky generally treats IIED[21]
*887 as a "gap-filler" claim, which is not available if "an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed." Rigazio v. Archdiocese of Louisville , 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993). As the Complaint allegations here suggest, constitutional and traditional state law torts are available to address Estep's claimed emotional distress.
Nonetheless, "[t]he tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." Green v. Floyd Co., Ky. , 803 F.Supp.2d 652, 655 (E.D. Ky. 2011).[22] Here, the Court cannot construe the Complaint as including an IIED claim of this type. Cf. Lovins v. Hurt , No. CIV.A. 11-216-JBC, 2011 WL 5592771, at *3 (E.D. Ky. Nov. 16, 2011) ("When the claim of emotional distress is a supplement to another tort claim, such as false imprisonment, the burden of showing sole intent cannot be met.").
Plaintiff pleads several purposes for Combs's alleged conduct, including "personal vengeance, personal vendetta, personal satisfaction[,] ... confining Plaintiff within fixed boundaries, ... [and] caus[ing] pain to Plaintiff." DE 1-1, at 9. While Estep also claims that Combs "intentionally and deliberately inflicted upon Plaintiff emotional distress by" committing the various other alleged torts, id. at 9-10, the emotional distress alleged is derivative of "the other actions brought against [Combs]." Lovins , 2011 WL 5592771, at *3. Under these circumstances, Estep needed to plead that Combs's "actions were intended only to cause him extreme emotional distress, rather than to [physically] touch [him] or to deprive him of his liberty." Banks v. Fritsch , 39 S.W.3d 474, 481 (Ky. Ct. App. 2001).
Here, the Complaint makes clear that emotional distress is not the crux of the torts alleged, but rather deprivation of liberty and the injuries to Plaintiff's wrists are. Childers , 367 S.W.3d at 582 ("If the emotional distress were the gravamen of the tort, then damages for the distress could be recovered, but only through a claim for intentional infliction of emotional distress, and only if the conduct were outrageous and the emotional distress severe."). Estep alleges "extreme emotional distress" as a "direct and proximate result of the [other] wrongful actions of Defendant Combs[.]" DE 1-1, at 10. The Court, even granting Plaintiff the favorable reading required at this stage, can only read the emotional distress claim "as an element of damages" arising out of the other torts. Childers , 367 S.W.3d at 582. When an Outrage claim is based on "the same emotional distress" resulting from other alleged torts, Kentucky law prohibits recovery for the stand-alone emotional distress tort. Id. (emphasis in original). Accordingly, *888 the IIED claim fails as a matter of law.
IV. CONCLUSION
In sum, the Court, for all these reasons: (1) rejects Defendant's statute of limitations argument as premature, (2) finds that Defendant is not, at this stage, entitled to qualified immunity, (3) finds that Estep adequately alleged two Fourth Amendment violations under § 1983 and properly pleaded Kentucky false imprisonment and malicious prosecution claims, and (4) finds dismissal warranted as to all other claims. Specifically, Estep failed to state claims upon which relief could be granted for any Fifth or Fourteenth Amendment § 1983 claim, any claim under § 1985 or § 1986, or any state law claim for false arrest (though the claim collapses into the false imprisonment claim), abuse of process, negligence, gross negligence, or IIED. Accordingly, the Court dismisses the deficient claims.
For the stated reasons the Court ORDERS as follows:
1. GRANTS Defendant's Motion to Dismiss (DE 9) IN PART and DENIES DE 9 IN PART ;
2. The Court (consistent with the above rulings) DISMISSES all but the four claims identified in this conclusion.

Under the relevant standard, the Court assesses (and, here, recites) the facts in favor of Plaintiff. Keys v. Humana, Inc. , 684 F.3d 605, 608 (6th Cir. 2012). The factual summary is from the Complaint, the sole pleading. DE 1-1, at 4-9.

The Complaint explicitly states the listed theories. Plaintiff did not dispute Defendant's identical characterization of his claims. DE 9-1, at 2. Thus, the Court limits its analysis to the causes Plaintiff explicitly identified as his bases for recovery, and does not substantively address perfunctorily mentioned theories. E.g. , DE 1-1, at 9 ¶ 35 (referencing "battery").
Similarly, Estep did not contest Defendant's observation that Plaintiff "does not appear" to seek relief under 42 U.S.C. §§ 1985 & 1986, despite referencing them in the Complaint. DE 9-1, at 9 n.6. In any event, a claim under either section would not survive dismissal on the facts here:
Section 1985 [addresses] five broad categories of conspiratorial activity. Kush v. Rutledge , 460 U.S. 719, 724, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). "Three ... relate to institutions and processes of the federal government-federal officers, § 1985(1) ; federal judicial proceedings, the first portion of § 1985(2) ; and federal elections, the second part of § 1985(3)."Id.... None of these provisions apply in this case.
As to the remaining two categories of conspiratorial activity, the second part of § 1985(2) prohibits conspiracies that interfere with the administration of justice in state court, Kush , 460 U.S. at 725 [103 S.Ct. 1483], and the first part of § 1985(3) is concerned with "the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws.' " [id. ] at 725 [103 S.Ct. 1483 ] "Claims asserted under these provisions require that the conspirators' actions be motivated by race or class-based animus," Bennett v. Batchik , No. 90-2036, 1991 WL 110385, at *6 (6th Cir. June 24, 1991) (citing Kush , 460 U.S. at 725 [103 S.Ct. 1483] ), an allegation which is wholly devoid in the complaint.
....
A cause of action under § 1986 is based on the violation of § 1985. Bartell v. Lohiser , 215 F.3d 550, 560 (6th Cir. 2000) (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation"). As this Court has already concluded that there is no violation under § 1985, the § 1986 claim fails and must be dismissed.
Tunne v. Paducah Police Dep't , No. 5:08 CV-188-R, 2010 WL 323547, at *9 (W.D. Ky. Jan. 21, 2010).

Excepting the IIED claim, which carries a 5-year limitations period and, here, is obviously timely. Craft v. Rice , 671 S.W.2d 247, 251 (Ky. 1984) ("There is a right to be free of emotional distress arising from conduct by another. Because the essence of the tort is the interference with this right and not whether any bodily harm results, the five-year statute of limitations applies.").

Plaintiff does not dispute Defendant's application of Kentucky's "commencement" rule to the statute of limitations question. However, the Court notes that Federal Rule 3, requiring only "filing a complaint with the court" for commencement, governs § 1983 actions originally filed in federal courts. Fed R. Civ. P. 3 ; see Mohler v. Miller , 235 F.2d 153, 155 (6th Cir. 1956) ("While state law controls the time within which an action must be begun, the manner in which an action is commenced and when it is deemed to have begun, are governed by the law of the forum. These matters are procedural and not substantive."), The Sixth Circuit, based on the Court's research, has not authoritatively decided whether state or federal rules govern commencement for limitations purposes in a removed § 1983 action. But see Coleman v. Dep't of Rehab. & Corr. , 46 F. App'x 765, 769 (6th Cir. 2002) (applying Ohio civil rules to determine commencement for purposes of applying the Ohio Savings Statute to a § 1983 claim). Nonetheless, for the following reasons, the Court applies CR 3.01 here. First, "the majority of circuit and district courts addressing this issue have held that where an action is first brought in state court then removed to federal court, a federal court must honor state court rules governing commencement of civil actions, even where the action arises under federal law." Benavides v. City of Austin , No. A-11-CV-438-LY, 2012 WL 12882858, at *3 (W.D. Tex. July 6, 2012) (collecting cases). But see Cannon v. Kroger Co. , 832 F.2d 303, 305 (4th Cir. 1987) (applying Federal Rule 3 to decide commencement for a removed "hybrid" § 301/fair representation claim). Second, the federal rules, by their terms, only "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81 (emphasis added). Third, the Sixth Circuit has, in other circumstances, held the federal rules inapplicable to pre-removal conduct in the state forum. See In re Summers , 863 F.2d 20, 21 (6th Cir. 1988) ("[W]here a complaint is properly filed in state court and then removed to federal court, it is inappropriate for the federal Court to apply Rule 11 sanctions for the filing of that complaint."). Finally, as noted, Plaintiff does not pursue- and has likely waived any argument for-application of the more generous federal commencement standard. The Court, seeing no contrary binding precedent, considers commencement under the Kentucky rubric within which the parties frame their timeliness arguments.

Though Defendant does not explicitly address the issue, this contention accounts for potential variation in claim accrual date for the prosecution-based claim. In Kentucky, a malicious prosecution claim will not lie unless "the criminal proceedings were terminated in favor of the party pursuing the claim." Dunn v. Felty , No. 2004-CA-001029-MR, 2005 WL 736596, at *2 (Ky. Ct. App. Apr. 1, 2005), aff'd , 226 S.W.3d 68 (Ky. 2007). Thus, Plaintiff's malicious prosecution claim could not have accrued until, at the earliest, February 13, 2017-the date the charges were orally dismissed. DE 1-1, at 6; see Dunn , 2005 WL 736596, at *2 ("[A] malicious prosecution claim could only accrue after the criminal proceedings were resolved.").

The Court, consistent with Rule 12(d) and for the reasons explained above, declines to consider the affidavit and Plaintiff's responsive factual contentions regarding service efforts, for purposes of this motion. Ennis v. Wells Fargo Bank, N.A. , No. 1:10-CV-751, 2011 WL 1118669, at *2 (W.D. Mich. March 25, 2011) (citation omitted) ("A district court's decision to exclude such materials should be explicit.").

The Court recognizes that some courts in this District have previously resolved analogous "commencement" arguments at the dismissal stage. Nonetheless, the Court finds the (non-binding) precedent distinguishable on the facts. See, e.g. , Vidal v. Lexington Fayette Urban Cty. Gov't , No. CIV.A. 5:13-117-DCR, 2014 WL 4418113, at *7 (E.D. Ky. Sept. 8, 2014) (dismissing on limitations grounds based on plaintiff's failure to "attempt to serve the defendants with summons"). The Court views Sixth Circuit treatment of other affirmative defenses at the dismissal stage as further supporting a narrow inquiry here. See, e.g. , Mills v. Barnard , 869 F.3d 473, 486-87 (6th Cir. 2017) (declining to address merits of qualified immunity defense involving "resolution of facts more appropriately dealt with at the summary-judgment stage or at trial."); Jackson , 2017 WL 4288921, at *1 ("[T]he Sixth Circuit has concluded that the exhaustion affirmative defense is best raised in a motion for summary judgment.").

Particularly, the Court sees nothing in Plaintiff's factual version that suggests probable cause to believe Estep violated any of the laws cited as grounds for his arrest. KRS 150.090(6) ("No person shall resist, obstruct, interfere with or threaten or attempt to intimidate or in any other manner interfere with any officer in the discharge of his duties under the provisions of this chapter."). Section 150.090 does not define "obstruct" but Kentucky law does define obstruction in analogous circumstances as "intentionally obstruct[ing], impair[ing] or hinder[ing] the performance of a governmental function by using or threatening to use violence, force or physical interference." KRS 519.020 ("Obstructing governmental operations."). Nothing in the pleadings indicates Estep threatened, "physically impeded" or "physically touched" Combs. O'Hara v. Marsh , No. 2016-CA-001662-MR, 2017 WL 5624609, at *2 (Ky. Ct. App. Nov. 22, 2017) (applying KRS 519.020 ). Probable cause to arrest for the menacing charge would require facts inducing a reasonable person in Combs's circumstances to believe that Estep "intentionally placed ... [Combs] in reasonable apprehension of imminent physical injury." KRS 508.050. No allegation supports such conduct occurring. Finally, the Complaint explicitly disavows the resisting charge, but even if this were construed as a legal conclusion, nothing in the pleadings indicates Estep resisted. See KRS 520.090(1) ("A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer ... from effecting an arrest of the actor or another by: (a) Using or threatening to use physical force or violence ...; or (b) Using any other means creating a substantial risk of causing physical injury to the peace officer or another."). In short, the Complaint-viewed through the requisite Plaintiff-favorable lens-excludes any probable cause finding.

Disputes "involv[ing] the resolution of facts [are] more appropriately dealt with at the summary-judgment stage or at trial." Mills , 869 F.3d at 487. To the extent the Defendant seeks a more fact-specific application of the qualified immunity doctrine, the argument is premature:
Although an officer's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point," that point is usually summary judgment and not dismissal under Rule 12. See Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist. , 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings before discovery" (emphasis in original) ); see also Jacobs v. City of Chicago , 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); Chesser v. Sparks , 248 F.3d 1117, 1121 (11th Cir. 2001) ("[Q]ualified immunity is typically addressed at the summary judgment stage of the case."); Grose v. Caruso , 284 Fed.Appx. 279, 283 (6th Cir. 2008) ("[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, [and] dismissal of Appellants on the basis of qualified immunity is premature.").
Wesley v. Campbell , 779 F.3d 421, 433-34 (6th Cir. 2015) (alterations in original) (citations omitted).

The Sixth Circuit has succinctly stated the general rubric for Fourth Amendment excessive force claims:
Whether an officer's use of force in effecting an arrest violates the Fourth Amendment is a question of whether his actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.... The test is reasonableness at the moment force is used, judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The court must carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.... Three factors guide this balancing: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.... Though important, these factors are not the end of the matter, as the court ultimately must determine whether the totality of the circumstances justifies a particular sort of seizure.
Martin v. City of Broadview Heights , 712 F.3d 951, 958 (6th Cir. 2013) (citing Graham factors) (quotation marks omitted).

"[P]robable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest. " Radvansky , 395 F.3d at 310 (citing Carroll v. United States , 267 U.S. 132, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) ) (emphasis in original).

Defendant does not argue immunity based on state law, so the state causes of action persist. Though Defendant does not cite to Kentucky doctrine, the Court notes that state qualified immunity would not aid Combs under the circumstances. The state negligence claims spring from the same allegedly false arrest. Kentucky law on qualified immunity, which Kentucky terms "qualified official immunity," substantially tracks the federal precedent. Yanero v. Davis , 65 S.W.3d 510, 522 (Ky. 2001). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e. , those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment ...; (2) in good faith; and (3) within the scope of the employee's authority." Id. (internal citations omitted). The good-faith component imports a presumption of officer "knowledge of and respect for 'basic, unquestioned constitutional rights.' " Id. at 523 (internal citations omitted). "Thus, in the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position[.]" Id. For the same reasons that federal qualified immunity doctrine does not, at the dismissal stage, shield Combs's conduct from § 1983 claims, Kentucky qualified-official immunity does not necessitate dismissal of the state negligence claims. Again, the defense did not raise the state law theory.

Though the Court, of course, recognizes that the Fourteenth Amendment provides the mechanism for applying the Fourth Amendment to states. Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980).

See also KRS 431.005(1) (2016) (amended 2017) ("A peace officer may make an arrest: ... (c) Without a warrant when he or she has probable cause to believe that the person being arrested has committed a felony; or (d) Without a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his or her presence[.]"); KRS 150.090(1) ("Conservation officers appointed by the commissioner shall have full powers as peace officers for the enforcement of all of the laws of the Commonwealth[.]"). But see id. ("[Conservation officers] shall not enforce laws other than this chapter and the administrative regulations issued thereunder ... unless so directed by the commissioner in life threatening situations or when assistance is requested by another law enforcement agency.").

The arrest, if without proper cause, satisfies Kentucky's basic false imprisonment claim elements. Dunn II , 226 S.W.3d at 71 ("False imprisonment is the intentional confinement or instigation of confinement of a plaintiff of which ... the plaintiff is aware[.]") (internal citations omitted); see also id. ("[F]alse arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest."). Combs, presumably not disputing the fact of the arrest, would be "liable for false imprisonment unless he ... enjoy[ed] a privilege or immunity to detain [Estep]." Id. (The " 'wrong' to be remedied in a case of false imprisonment is ... detention without legal process." (internal citation omitted) ). "Two common examples of a law enforcement officer's privilege to detain an individual are (1) an arrest pursuant to a warrant or (2) an arrest without a warrant in which the officer has probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." Id. (internal citations and quotation marks omitted). In the pleaded narrative, Combs had neither privilege when he arrested Estep.

Even if the Court were to read Plaintiff's claim regarding "institution of unwarranted and unjustified criminal proceedings against the Plaintiff," as not directly implicating Defendant, the Complaint adequately alleges Combs-involvement. DE 1-1, at 7 ¶ 19. This is true even if the Court interprets Estep's claim that Combs "maliciously ... prosecut[ed] a citizen" as a legal conclusion or boilerplate recitation. Id. at 8 ¶24. A "person who sets the machinery of the law in motion" initiates proceedings for malicious prosecution purposes. Martin , 507 S.W.3d at 10. The Complaint alleges Combs was the arresting, and only involved, officer. These factual claims readily support an inference that Defendant was, at least initially, the moving force behind the prosecution. This suffices at the current procedural juncture.

Cf. Garcia v. Whitaker , 400 S.W.3d 270, 276-77 (Ky. 2013) ("We believe the trial court incorrectly concluded that Garcia's abuse of process claim was contingent on the success of his malicious prosecution claim.... While the two torts of abuse of process and malicious prosecution often accompany one another, they are distinct causes of action.").

See DE 1-1, at 9 ¶ 30 ("Defendant Combs sought the use of process for an ulterior purpose, including, but not limited to personal vengeance, personal vendetta, personal satisfaction or personal satisfaction from harassment of Plaintiff.").

Thus, in a different formulation, "[a] common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." Wright v. House of Imports, Inc. , 381 S.W.3d 209, 213 (Ky. 2012).

Kentucky courts have also described gross negligence as "something more than the failure to exercise slight care. We have stated that there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." City of Middlesboro v. Brown , 63 S.W.3d 179, 181 (Ky. 2001) (internal citation omitted).

Kentucky IIED has four elements: '[1] the wrongdoer's conduct must be intentional or reckless; [2] the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; [3] there must be a causal connection between the wrongdoer's conduct and the emotional distress[;] and [4] the distress suffered must be severe." Osborne v. Payne , 31 S.W.3d 911, 913-14 (Ky. 2000). The tort is only "intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." Id. at 914.

IIED can also be pleaded alternatively. However, "a litigant cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same set of facts." Childers v. Geile , 367 S.W.3d 576, 581 (Ky. 2012) ; see also id. at 582-83 ("Thus the notion that intentional infliction of emotional distress is a gap-filler tort is correct. It is also correct that it is a stand-alone tort under the right facts. This is not to say that it cannot be pleaded alternatively, but there can be only one recovery on a given set of facts.... There can be only one recovery for emotional distress on the same acts. It will either be caused as a result of an injury done to the plaintiff physically or it will be caused by outrageous conduct the purpose of which is to inflict emotional distress.").